PRYOR CASHMAN LLP
  Ilene Farkas *(pro hac vice application forthcoming)*
  ifarkas@pryorcashman.com
  M. Mona Simonian *(pro hac vice application forthcoming)*
  msimonian@pryorcashman.com
7 Times Square
New York, NY 10036
Telephone:    (212) 421-4100

SINGER CASHMAN LLP
  Adam S. Cashman (Bar No. 255063)
  acashman@singercashman.com
  Evan Budaj (Bar No. 271213)
  ebudaj@singercashman.com
505 Montgomery Street, Suite 1100
San Francisco, CA 94111
Telephone:    (415) 500-6080
Facsimile:    (415) 500-6080

*Attorneys for Plaintiff Epidemic Sound, AB*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISON

| | |
|---|---|
| EPIDEMIC SOUND, AB,<br><br>            Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., f/k/a FACEBOOK, INC.,<br><br>            Defendant. | CASE NO. 3:22-CV-4223<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Epidemic Sound, AB ("Epidemic" or "Plaintiff"), by its attorneys, Pryor Cashman LLP and Singer Cashman LLP, as and for its complaint against defendant Meta Platforms, Inc., f/k/a Facebook, Inc. ("Meta" or "Defendant"), alleges as follows:

**NATURE OF THE ACTION**

1. This action seeks to stop the theft of music created by hundreds of musicians, songwriters, producers and vocalists, theft occurring knowingly, intentionally and brazenly by Meta on its Facebook and Instagram social media platforms on a daily basis. Defendant Meta is not merely aware of this infringement. It has actively infringed, as well as participated in, encouraged and enabled such infringement. In fact, Meta has created tools whose primary purpose is to increase the amount of theft on Facebook and Instagram. Meta's unlawful conduct has resulted in more than 80,000 new instances of theft of Epidemic's works per day, all directly by, or at the encouragement of, Meta.

2. Meta has ignored Epidemic's repeated notices of infringement and requests for access to the tools that would help stop the infringement. Meta has refused to enter into a license with Epidemic, even though Meta has done so with many other rights holders. Perhaps Meta is hoping to get away with it for as long as possible. Perhaps Meta is hoping that it will intimidate a company like Epidemic into bowing to Meta rather than incurring the disruption and expense of a lawsuit. Meta is wrong.

3. Epidemic is a global music label, publisher and technology company whose mission is to support music creators so that they can be paid for what they do: create music for the world to enjoy. Epidemic is the owner of a catalog of over 38,000 top quality music works in over 160 genres, for use in video content, television and film productions, podcasts, music streaming platforms and other media. It has created a global network of content creators, brands and licensed partners in order to facilitate the authorized exploitation of its music creators' original music around the world.

4. Epidemic is committed to protecting its valuable intellectual property. It takes great pride in its compensation model which aims to remunerate music creators for their work, but also provides them with predictability and stability. This means remunerating them for their work before a track is made available and then sharing its revenues with its artists once their work is available for license. It is also important to Epidemic that music creators are able to grow creatively when working

with Epidemic, and therefore Epidemic supports its artists in each step of the creative process, from their initial demos to the final mixes.

5. Epidemic requires those using their works to have a license. Epidemic, as the owner of both the sound recording and musical composition to works, fiercely protects its intellectual property rights, not only for itself but for its content creators.

6. Meta is stealing thousands of Epidemic's songs at any given moment. Worse yet, it knows it is doing so, and refuses to do anything to stop it much less pay for using the works it is using without license. Epidemic brings this suit to stop this outright theft.

7. Epidemic learned that Meta has been storing, curating, reproducing, and distributing Epidemic's music without authorization, offering Epidemic's music for free without proper attribution or license, and thus infringing on (at least) hundreds of Epidemic's copyrighted works across the Facebook and Instagram platforms, on a massive scale, including by offering Epidemic's works through its "music library" for any of its users to use, including to download, stream, or incorporate into video content, for free, without license or other authorization. Furthermore, Meta has created tools—Original Audio and Reels Remix—which encourage and allow its users to steal Epidemic's music from another user's posted video content and use in their own subsequent videos, resulting in exponential infringements on Meta's platform, at Meta's hands. Upon information and belief, there are currently nearly 1000 of Epidemic's tracks that are being stored, curated, reproduced, distributed and/or otherwise exploited by Meta through its music library or its content copying tools, Original Audio and Reels Remix.

8. The unauthorized use of Epidemic's works across Meta's platforms is rampant. As a result of Meta's actions, Epidemic's music is available across *millions* of videos and have been viewed *billions* of times. Approximately 50,000 infringing videos and 30,000 new uploads containing Epidemic's music are uploaded to Facebook and Instagram, respectively, on a *daily basis.* Upon information and belief, approximately 94% of content using Epidemic's music on Meta's platforms is unlicensed and thus infringing.

9. These infringing uses are not merely users posting infringing works that Meta has failed to take down – as Meta would like to believe and as it will undoubtedly tell this Court, but much of this

infringement is caused and done by Meta itself. This case is about Meta *itself* actively and directly infringing Epidemic's works by storing them in its online music library and then making a curated selection of Epidemics' works available across its platforms. This case is about Meta creating features which allow and encourage users to easily reproduce and synchronize Epidemic's music without authorization and without compensation to Epidemic, its songwriters and recording artists.

10. Moreover, Meta has deliberately prevented Epidemic from being able to protect its catalog from infringement across Meta's platforms. Meta offers rightsholder certain rights management tools designed to enable copyright owners to identify, protect and derive value from their works. Meta has repeatedly refused Epidemic access to the rights management tool for music content, without a legitimate explanation. The rationale is clear: Meta knows that if it is forced to recognize Epidemic's undeniable ownership of its content, it will have to properly compensate Epidemic – something that it has been unwilling to do despite repeated notices of breach. Meta's failure to provide Epidemic with access to this tool is inexcusable.

11. Epidemic has repeatedly put Meta on notice of its infringement and has tried to engage in a meaningful dialogue with Meta so that Epidemic's intellectual property can be protected and licensed. Epidemic has, on over a dozen occasions, informed Meta that the infringement on its platforms spans beyond user generated content and that Meta itself is actively storing, offering, curating, reproducing, distributing, and performing Epidemic's music to others without a license or authorization through its music library and its Original Audio and Reels Remix features. Epidemic has repeatedly asked for access to the appropriate rights management tool so that it can help to identify infringing conduct. Meta has no defense. Instead, Meta has not only turned a blind eye to this widespread, daily infringement, it has actively engaged in, and continues to *add* to, the theft of Epidemic's content across its platform.

12. Meta's past and ongoing infringement of Epidemic's works must stop. Therefore, Plaintiff seeks: (i) a declaration that Meta has directly and/or secondarily infringed Epidemic's copyrights under the Copyright Act; (ii) a declaration that such infringement is willful; (iii) a permanent injunction enjoining Meta's infringing conduct; (iv) damages, statutory or otherwise for Meta's infringement of Epidemic's works; (v) Epidemic's costs, including reasonable attorneys' fees; (vi)

prejudgment and post-judgment interest according to law; and (vii) such other and further relief as this Court deems just and proper.

**PARTIES**

13. Plaintiff Epidemic is a global leader in the music industry with offices around the world. Epidemic is the owner, producer, and distributor of over 38,000 world-class music tracks. Epidemic partners with its songwriters, artists and producers to empower their creative process, to facilitate the distribution of their works for use in video content, podcasts, television and film production, music streaming platforms, and other media and to collaborate with them so that they can share their music, increase their visibility, and be compensated for their work.

14. Epidemic is organized under the laws of Sweden with its principal place of business at 556781-0899, Vastgotagatan 2 Stockholm 118 27 Sweden.

15. Upon information and belief, Defendant Meta (f/k/a Facebook, Inc.) is one of the most well-known social media and technology companies in the world. Meta owns and operates, among other things, the widely used social media platforms Facebook and Instagram. Meta has over 80 offices worldwide with its headquarters located at 1 Hacker Way, Menlo Park, California 94025.

**JURISDICTION AND VENUE**

16. This Court has jurisdiction over this action pursuant to 17 U.S.C. §§ 101 *et seq.*, 28 U.S.C. §§ 1331, 1338, and 1367 because the action involves claims arising under the Copyright Act.

17. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the claims are between a citizen of a State and a citizen or subject of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

18. Upon information and belief, this Court has personal jurisdiction over Defendant Meta as it maintains its principal place of business within the State of California and transacts business within the State of California.

19. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred, and Meta maintains a principal place of business within the Northern District of California.

**DIVISIONAL ASSIGNMENT**

20. Under Northern District of California Local Rule 3-2(d), this case is properly assigned to the San Francisco or Oakland Divisions because a substantial part of the events or omissions giving rise to the claim occurred in San Mateo County.

**FACTUAL ALLEGATIONS**

**I.  META'S RAMPANT INFRINGEMENT OF EPIDEMIC'S MUSIC**

21. Epidemic owns all rights, including the copyright, in and to the sound recordings and the underlying musical compositions for all works in its music catalog.

22. In order to access and use Epidemic's extensive catalog of music, Epidemic requires users to license its tracks. Epidemic's tracks are made available for license to individual and commercial content creators through paid subscriptions, subject to specific, written terms. Epidemic's licenses allow its licensees to incorporate Epidemic's tracks into their *own* content, such as their own created videos, which may be posted to social media accounts that are specifically identified for Epidemic pursuant to the terms of Epidemic's licenses.

23. Epidemic does not permit its licensees, however, to unlimited use of its catalog, or to license, sublicense, distribute or otherwise authorize use of Epidemic's music to third parties outside of the scope of the license. Rather, licensees are limited to use of Epidemic's music for specific purposes identified in the license, such as personal content creation or, if a commercial license, for specified commercial uses by the licensee itself.

24. Despite the lack of any license to Meta permitting it to make Epidemic's tracks available for its hundreds of millions of users in the United States alone, and despite the repeated demands made by Epidemic to Meta to cease its infringement, Meta has been offering, and continues to offer Epidemic's music to all users on Meta's platforms such as Facebook and Instagram, without authorization.

25. A preliminary analysis has revealed that thousands of Epidemic's music tracks are available on Meta's platforms at any given time, appearing in *millions* of user videos, the vast majority of which are not licensed by Epidemic and thus wholly unauthorized.

**A. Through Its Music Library, Meta Has Actively Stored, Curated, Reproduced, Performed And Distributed Epidemic's Music To Its Users, Directly Infringing Epidemic's Copyrights.**

26. Meta *itself* has been storing, curating, reproducing, performing, distributing, and otherwise exploiting Epidemic's music on a daily basis, without a license. Meta has created a curated library of music that Meta accumulates, stores, organizes by genre and that it makes available to its users of its social media platforms (the "Music Library") for downloading, streaming, and use of such music in video content and posts. Epidemic knows of over 950 of its music tracks (the "Tracks") that have been reproduced, stored, made available to, and distributed to its users by Meta through its Music Library or through its other content sharing tools without a license. Epidemic is confident that further research would reveal additional infringements.

27. A list of the Tracks that Epidemic has identified, to date, which have been, or currently are being made available by Meta to its users on its platforms through the Music Library and/or its other content sharing tools discussed herein is set forth on **Exhibit A**. The federal copyright registration numbers for each of the Tracks are also identified on Exhibit A. Because Epidemic is the copyright owner of both the sound recordings and underlying musical compositions embodied in the Tracks at issue herein, there are over 1,800 copyrighted works that are being infringed by Meta.

28. Upon information and belief, Meta makes the music in its Music Library available to Facebook and Instagram users. This conduct enables unlicensed Meta users to, among other things, download, stream, and synchronize Epidemic's Tracks with video content posted, using tools provided by Meta, on, *e.g.*, Facebook Stories, Instagram Stories and Facebook and Instagram Reels.

29. By including Epidemic's Tracks in its Music Library without authorization, Meta is actively offering Epidemic's Tracks for download, streaming, user synchronization, reproduction and distribution to its (unlicensed) users without a proper license or any other authorization from Epidemic. Nor has Epidemic authorized any label, publisher, or distributor to make the Tracks (or any other music owned by Epidemic) available on the Music Library.

30. Moreover, Meta is deriving substantial financial benefit through advertising revenues and increased user engagement derived from the inclusion of the Tracks in its Music Library. Meta has not shared, and is not sharing, any portion of such advertising revenues with Epidemic in

connection with the unauthorized use of Epidemic's Tracks and has not renumerated Epidemic in any way for the use of such Tracks.

### B. The Original Audio And Reels Remix Features Offered By Meta Directly Infringe And Facilitate The Rampant Infringement Of Epidemic's Tracks

29. Meta's infringement of Epidemic's Tracks has grown even more rampant recently, in part due to Meta's creation of tools and features made available to users that enable, encourage and contribute to massive infringement of Epidemic's Tracks.

30. For example, Meta has introduced into its Instagram platform certain tools or features referred to as "Original Audio" and "Reels Remix" (the "Features").

31. Instagram users are given the ability by Meta to create and post a "Reel," which is a short multi-clip video, often accompanied by an audio component, such as music selected by the creator of the video. According to Instagram's website, when a user creates a Reel, that user may search for and use music from the Music Library in their Reel. That Reel may then be posted to that user's Instagram account. A true and correct copy of the public page of Instagram's website entitled "Introducing Instagram Reels" is attached hereto as **Exhibit B**.

32. Upon information and belief, when Reel contains music that is not procured from its Music Library, or is not identified by Meta as music available in its Music Library (via certain metadata associated with the musical track), Meta's Original Audio feature presumes that such music is owned by the user posting the Reel, and then Meta includes a "button" identifying that music as "original audio." Meta then allows any of its users who view that public Reel to simply click on that "button" to "rip," or separate that music from the video content, and use a copy of that music for themselves and, upon information and belief, to download or save "original audio" to curate personal music libraries on the Meta platforms for future use. Meta provides the tools to allow the viewer to synchronize that music to that viewer's own Reel and promotes such tool publicly. A true and correct copy of a Facebook "Help Center" webpage concerning use of Original Audio is attached hereto as **Exhibit C**. *See also* Ex. B at 2 (discussion of the Original Audio use on Instagram).

33. Meta acknowledges that this unlimited copying, sharing, synchronization and distribution of music, licensed or not, is the intention behind the Original Audio feature, stating publicly

1  on Facebook's website: "[w]hen you share a reel on Facebook with a public audience, if the reel doesn't have added music or someone else's original audio from the Audio Library, the sound in the reel will be attributed to you as your original audio. *Other people can use your original audio in their reels and your attribution will appear in their reel*." Ex. C (emphasis added); *see also* Ex. B.

34. In other words, the Original Audio feature allows Meta to extract, or separate the music from the original video content in which it was incorporated, and reproduce it for any of their billions of users who wish to incorporate it into their own video content, irrespective of whether Meta (or anyone else) has any authority to offer, reproduce, distribute or otherwise use that music in the first instance. No one, even Epidemic's licensed subscribers, has the right to do this without Epidemic's authorization.

35. In addition to the Original Audio feature, Meta also offers the Reels Remix feature which similarly facilitates and enables massive infringements on its platforms. Reels Remix is a tool offered to Instagram users that allows a user to incorporate another user's Reel into their own, including any audio that was included in the original Reel, thereby creating a new and original "remix" of the original Reel.

36. As with the Original Audio feature, Meta acknowledges that this is the intended use of the feature, stating publicly on its website: "[r]emixing a reel on Facebook allows you to create a new reel inspired by someone else's reel. Your reel will be shown with the original reel. It'll use the audio from the original reel, unless you replace it with your own original audio. The original reel's creator will be credited on your reel. As you begin creating your reel, you'll see the original one side-by-side." A true and correct copy of a Facebook "Help Center" webpage concerning use of Reels Remix is attached hereto as **Exhibit D**.

37. The Reels Remix feature thus allows and encourages its users to take another user's audiovisual content, including any music used therein whether authorized or unauthorized, and incorporate it into their own Reel, irrespective of whether anyone has the authority to synchronize or otherwise use the incorporated music in this manner. This feature enables, encourages, and contributes to exponential infringement of works, allowing one user's infringement to be replicated in other users' Reels without limitation.

38.     Epidemic's own investigation reveals that a substantial number of Epidemic's Tracks being used without authorization on Meta's platforms have also been improperly reproduced in subsequent Reels through Meta's Original Audio and Reels Remix features.

39.     Tens of thousands of videos containing unauthorized uses of Epidemic's music are uploaded to Facebook and Instagram *on a daily basis*, resulting in *millions* of unauthorized uses of Epidemic's content on Meta platforms.[1]  By providing its users with the Features, Meta has provided its hundreds of millions of users in the United States with the Features that not only permit, but encourage all of its users to take Epidemic's music content (including the Tracks) available on Meta's platforms, without license, and synchronize such music content (without license) to their (unlicensed) Reels and other content.

40.     Upon information and belief, for both Features, Meta has created unauthorized reproductions of Epidemic's Tracks and other music content in order to allow subsequent users to incorporate the Tracks into their own content.

41.     For the Original Audio tool, upon information and belief, Meta must actually separate Epidemic's music Track from the video content in the original user's Reel, to make that music available to other users so that they can incorporate, or synchronize, Epidemic's content into their own Reels. Such "ripping" of the Track from a synchronized video constitutes an unauthorized reproduction of the Track by Meta.

42.     For the Reels Remix feature, upon information and belief, Meta must make a reproduction of the original user's Reel to display it beside the subsequent user's Reel.  Accordingly, upon information and belief, the Features not only enable users to exponentially infringe Epidemic's tracks, it also requires Meta to make unauthorized reproductions of Epidemic's Track by reproducing the Track in a new format that includes both the original user video and the new user video.

---

[1] There are, of course, videos that are uploaded to Facebook and Instagram by Epidemic's subscribers that are authorized uses.  Epidemic can identify those authorized uses and separate them from the unauthorized uses as subscribers are required to provide Epidemic with their social media account information.  However, even if the original Reel, for example, was uploaded by an authorized Epidemic subscriber, the tools that Meta uses and provides to its users to copy, store, curate, synchronize and reproduce this music, without license, then results in rampant unauthorized uses of Epidemic's content.

## II. META HAS PURPOSEFULLY HINDERED EPIDEMIC'S ABILITY TO PROTECT ITS INTELLECTUAL PROPERTY AND HAS REFUSED TO PROVIDE EPIDEMIC WITH ACCESS TO THE TOOLS DESIGNED TO HELP EPIDEMIC IDENTIFY AND STOP INFRINGEMENT

43. In addition to actively infringing Epidemic's Tracks on a massive scale, Meta is simultaneously stonewalling Epidemic's efforts to protect its valuable catalog, including the Tracks.

44. Meta, like other media platforms, offers content creators and licensors certain rights management tools "for the purposes of identifying and monitoring the use of content in which you own and/or control exclusive rights." A true and correct copy of the "Rights Manager Terms" available on the facebook.com webpage is attached hereto as **Exhibit E.** Meta publicly describes its right management tool as a "copyright management tool to help rights holders manage, authorize, protect and drive value from their videos, audio and image content on Facebook and Instagram." A true and correct copy of the "Rights Manager Eligibility" page available on the facebook.com webpage is attached hereto as **Exhibit F**. Meta goes on to state that such tools are intended "for content creators wanting to protect their works on Facebook and Instagram at scale." A true and correct copy of the "About Rights Manager: Request Access to Rights Manager" page on the facebook.com webpage is attached hereto as **Exhibit G**.

45. While Meta allowed Epidemic to access its rights management tool for video content, it has repeatedly refused Epidemic's requests for access to its rights management tool for music content. Meta's refusal continued despite Epidemic's repeated explanations that the rights management tool for video was woefully insufficient to monitor or protect its music on Meta's platforms at scale.

46. Upon information and belief, Meta readily provides other rightsholders in the music industry, such as certain record labels and other music rights holders, with access to its rights management tools for music content to help them monitor and protect their intellectual property. Nevertheless, Meta has withheld this seemingly essential tool from Epidemic, despite repeated demand for such access, leaving Epidemic without proper recourse or ability to deal with the rampant infringement of the Tracks on Meta's platforms.

47. Meta's unjustified and unexplained refusal to provide Epidemic with access to its rights management tool for music content has enabled and continues to contribute to the rampant infringement of Epidemic's music on its platforms.

### III. META HAS BEEN ON NOTICE OF ITS INFRINGING CONDUCT BUT HAS REFUSED TO ADDRESS ITS WIDESPREAD INFRINGEMENT

48. Meta knows full well that it has been infringing Epidemic's content and has been on notice of its infringement since at least November 2017. Upon discovery of substantial infringing content on Meta's platforms, Epidemic contacted Meta in an effort to discuss such infringement. Epidemic also sought to address false claims of ownership of Epidemic's content and Meta's misattribution of ownership to such infringers, many of whom are, upon information and belief, Meta's licensed partners. Epidemic has provided Meta with representative lists of its content being infringed. Epidemic has provided Meta with percentages showing the amount of infringing activity on Meta's platform that occur on a daily basis.

49. Epidemic has repeatedly informed Meta that the rampant infringement on Meta's platforms is not merely user-generated content ("UGC") posted to the platform, but that Meta, through its own conduct, is actively storing, offering, curating, reproducing, performing and distributing Epidemic's music to its users without a license or authorization through the Music Library and then through "Reels Remix" and "Original Audio" Features. Epidemic has repeatedly asked for access to the readily available rights management tools to permit Epidemic to police their copyrights and stop the infringement.

50. Epidemic's efforts to get Meta to cease its infringing conduct have been ongoing.

51. Meta has tried to justify its infringement by pointing to licenses it has with other distributors as purported authorization for its use of certain Epidemic Tracks in the Music Library and throughout its platforms.

52. Yet Epidemic has informed Meta that those third parties did not own Epidemic's content and were not authorized to provide Meta with any rights to Epidemic's content, that Epidemic was the sole owner of the copyrights in and to all musical works in its catalog, and that a license was required from Epidemic in order to make Epidemic's music available across its platforms.

53. For example, on November 13, 2018, Rob Arcamona, an Associate General Counsel at Meta, acknowledged Epidemic's claims of infringement and responded:

> Are you saying that the entities you are conflicting with are infringing your content? I had understood that perhaps these conflicts were caused

> by distributors of yours, or related entities, uploading content that is part of both their catalog and your own. I had not previously understood that these other entities were infringing your content.

54. The very next day, a representative from Epidemic confirmed: ***"[Y]es, we're saying that these entities are infringing on our content. We don't work with any distributor and have granted no rights to distribute or collect on our behalf.***" (emphasis added).

55. Despite this clear, unequivocal notice that Epidemic was the sole owner and sole potential licensor of its content, and despite Epidemic's repeated notifications of the infringement occurring continually on Meta's platforms, and despite Epidemic's repeated requests for access to rights management tools to help Epidemic address the infringements at scale, Meta's knowing infringement of Epidemic's music, including the Tracks, has continued, unchanged.

56. Not only has Meta completely failed to address its own infringing conduct despite repeated notices from Epidemic, but, upon information and belief, it has also continued to *add* unauthorized Epidemic content to its Music Library, while willfully turning a blind eye to the past and present rampant infringement.

57. Meta, of course, knows that it requires a license from copyright owners such as Epidemic to offer their content in the Music Library. It is public knowledge that Meta entered into licenses with major record labels and others, and paid very large sums of money to properly license this music and make it available to its users for use in video content, including through the Music Library and the Features, without violating the intellectual property rights of the content owners.[2] Meta itself has claimed that its agreements right music rightsholders are designed to "protect artists, songwriters, and partners who are the cornerstone of the music community." A true and correct copy of the relevant Facebook webpage, and the relevant Instagram webpage, are attached hereto as **Exhibits H and I,** respectively. Yet it refuses to do the same for Epidemic.

//

//

---

[2] https://www.theverge.com/2018/3/9/17100454/facebook-warner-music-deal-songs-user-videos-instagram; https://itp.live/content/3292-3-major-music-labels-now-have-licensing-deals-with-facebook; https://www.musicbusinessworldwide.com/facebook-signs-new-music-deals-with-merlin-beggars-group-pias-andingrooves/; https://www.digitalmusicnews.com/2018/01/26/facebook-agreement-music-publishers/

## FIRST CAUSE OF ACTION
### (Direct Copyright Infringement)

58. Epidemic incorporates the allegations contained above in paragraphs 1 through 58 as if fully restated herein.

59. Without authorization, Meta was and is storing, reproducing, distributing, and performing to the public Epidemic's copyrighted songs in violations of 17 U.S.C. § 106(1), (3), and (6), including but not limited to the Tracks listed in Exhibit A hereto.

60. Without authorization, Meta is making, or causing to be made, unauthorized reproductions of Epidemic's copyrighted songs, including but not limited to certain of the Tracks on Exhibit A hereto, by offering such works for permanent download, streaming, synchronization and other uses to users through the Music Library and Features.

61. Each time a user requests a copy of one of Epidemic's songs available through the Music Library, Meta makes a perfect, fixed digital copy of the work and transfers it to the user in violation of Epidemic's exclusive reproduction and distribution rights under 17 U.S.C. §106(1) and (3). Each time a user requests to stream a copy of an Epidemic song available through its Music Library, Meta publicly performs the work through a digital audio transmission to the user, in violation of Epidemic's exclusive performance rights under 17 U.S.C. § 106(6).

62. In addition, each time a user employs Meta's Features—Original Audio and Reels Remix—Meta reproduces a perfect, fixed digital copy of Epidemic's copyrighted music, including certain of the Tracks identified in Exhibit A, and distributes same to users in violation of Epidemic's exclusive reproduction and distribution rights under 17 U.S.C.§ 106(1) and (3).

63. Meta's acts of infringement are willful, intentional and purposeful, in disregard and indifferent to Epidemic's rights.

64. As a direct and proximate result of Meta's infringement of Epidemic's copyrights and exclusive rights under copyright, Epidemic is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, at Epidemic's election, pursuant

to 17 U.S.C. §504(b), Epidemic shall be entitled to their actual damages, including Meta's profits from infringement, as will be proven at trial, but in no event less than $142 million dollars.

65. Epidemic is also entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

66. Meta's conduct is causing and, unless enjoined by this Court, will continue to cause Epidemic great and irreparable injury that cannot be fully compensated or measured in money damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Epidemic is entitled to a permanent injunction prohibiting infringement of Epidemic's copyrights and exclusive rights under copyright.

## SECOND CAUSE OF ACTION
### (Inducement of Copyright Infringement)

67. Epidemic incorporates the allegations contained above in paragraphs 1 through 67 as if fully restated herein.

68. Sound recordings and musical compositions owned by Epidemic have been and continue to be illegally reproduced, distributed, and publicly performed without authorization on Meta's platforms in violation of 17 U.S.C. § 501 *et seq.* Epidemic owns the copyrights and the exclusive reproduction, distribution, and public performance rights, in the copyrighted works listed in Exhibit A and many other works that have been infringed on Meta's platforms. Meta is secondarily liable under the Copyright Act for such infringing acts, including its users' direct infringement of Epidemic's exclusive right to reproduction each time they download, stream or synchronize a copy of Epidemic's works from Meta's Music Library and each time a user uses one of the Features to create a video with Epidemic's works.

69. Meta operates and maintains a Music Library and Features, including Original Audio and Reels Remix, which encourage its users to infringe Epidemics' copyrighted works. Meta's Music Library and Features provide its users with the ability and tools to infringe. Meta's inducement of copyright infringement is apparent from, among other things, the predominantly infringing Epidemic content available on Meta's platforms; Meta's unauthorized inclusion of Epidemic's works in its curated Music Library; the promotion, ease, and accessibility of the Features,

which allow users to reproduce Epidemic's works without authorization through a single click; and Meta's business model, which is dependent on the Music Library and Features to keep up with other video content platforms at the expense of copyright owners. Meta unlawfully induced the direct infringement of Epidemic's copyrighted works, including those listed in Exhibit A, in violation of Epidemics' exclusive rights under the copyright laws of the United States. 17 U.S.C. § 106.

70. Meta's acts of infringement are willful, intentional and purposeful, in disregard and indifferent to Epidemic's rights.

71. As a direct and proximate result of Meta's Features which infringe on Epidemic's copyrights and exclusive rights under copyright, Epidemic is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, at Epidemic's election, pursuant to 17 U.S.C. §504(b), Epidemic shall be entitled to their actual damages, including Meta's profits from infringement, as will be proven at trial, but in no event less than $142 million dollars.

72. Epidemic is also entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

73. Meta's conduct is causing and, unless enjoined by this Court, will continue to cause Epidemic great and irreparable injury that cannot be fully compensated or measured in money damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Epidemic is entitled to a permanent injunction prohibiting infringement of Epidemic's copyrights and exclusive rights under copyright.

**THIRD CAUSE OF ACTION**
**(Contributory Copyright Infringement)**

74. Epidemic repeats and realleges every allegation contain in paragraphs 1 through 74 as if fully set forth herein.

75. Sound recordings and musical compositions owned by Epidemic have been and continue to be illegally reproduced, distributed, and publicly performed without authorization on Meta's platforms in violation of 17 U.S.C. § 501 *et seq.* Epidemic owns the copyrights and the

exclusive reproduction, distribution, and public performance rights, in the copyrighted works listed in Exhibit A and many other that have been infringed on Meta's platforms. Meta is secondarily liable under the Copyright Act for such infringing acts, including its users' direct infringement of Epidemics' exclusive right to reproduction each time they download, stream or synchronize a copy of Epidemic's works from Meta's Music Library and each time a user uses one of the Features to create a video with Epidemic's works.

76. Meta is liable as a contributory copyright infringer. Meta has actual and constructive knowledge of the infringing activity that occurs on its platforms. Through the creation, maintenance and operation of Meta's Music Library and its Features, Meta is providing tools to its users to enable them to reproduce distribute, synchronize, and perform Epidemic's works without authorization. Meta thereby knowingly causes and materially contributes to such unlawful reproduction, distribution and performance of Epidemic's copyright works, including those listed on Exhibit A hereto, in violation of Epidemic's exclusive rights under the copyright laws of the United States. 17 U.S.C. § 106.

77. Meta's acts of infringement are willful, intentional and purposeful, in disregard and indifferent to Epidemic's rights.

78. As a direct and proximate result of Meta's Features which infringe on Epidemic's copyrights and exclusive rights under copyright, Epidemic is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, at Epidemic's election, pursuant to 17 U.S.C. §504(b), Epidemic shall be entitled to their actual damages, including Meta's profits from infringement, as will be proven at trial, but in no event less than $142 million dollars.

79. Epidemic is entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

80. Meta's conduct is causing and, unless enjoined by this Court, will continue to cause Epidemic great and irreparable injury that cannot be fully compensated or measured in money damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Epidemic is

entitled to a permanent injunction prohibiting infringement of Epidemic's copyrights and exclusive rights under copyright.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

A. For a declaration that Meta has directly and/or secondarily infringed Epidemic's copyrights under the Copyright Act;

B. For a declaration that such infringement is and/or was willful;

C. For a permanent injunction enjoining Meta and Meta's agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them, from directly and/or secondarily infringing, and/or aiding, encouraging, enabling, inducing, causing, materially contributing to, or otherwise facilitating the infringement of, any of Epidemic's copyrights or exclusive rights protected by the Copyright Act, whether now in existence or hereafter created;

D. For all damages to which Epidemic may be entitled, including for statutory damages in the maximum amount allowed by law, or in the alternative and at Epidemic's election, all actual damages including Meta's profits in such amount as may be found at trial;

E. For Epidemic's costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

F. For prejudgment interest according to law; and

G. For such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Epidemic hereby demands a trial by jury as to all issues so triable in this action.

Date: July 20, 2022

Respectfully submitted,

SINGER CASHMAN LLP

By:_____
Adam S. Cashman
acashman@singercashman.com
Evan Budaj
ebudaj@singercashman.com
505 Montgomery Street, Suite 1100

|   |   |
|---|---|
| 1 | San Francisco, California 94111 |
| 2 | Telephone:   (415) 500-6080<br>Facsimile:   (415) 500-6080 |
| 3 | PRYOR CASHMAN LLP |
| 4 | Ilene Farkas<br>*(pro hac vice application forthcoming)* |
| 5 | ifarkas@pryorcashman.com<br>M. Mona Simonian |
| 6 | *(pro hac vice application forthcoming)*<br>msimonian@pryorcashman.com |
| 7 | 7 Times Square<br>New York, NY 10036 |
| 8 | (212) 421-4100 |
| 9 | *Attorneys for Plaintiff Epidemic Sound, AB* |