LATHAM & WATKINS LLP
    Joseph R. Wetzel (SBN 238008)
    Brittany N. Lovejoy (SBN 286813)
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600
Email:  Joe.Wetzel@lw.com
            Brittany.Lovejoy@lw.com

LATHAM & WATKINS LLP
    Allison L. Stillman (*pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone:  212.906.1747
Email:  Alli.Stillman@lw.com

Attorneys for Defendant *Meta Platforms, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EPIDEMIC SOUND, AB,<br><br>Plaintiff,<br><br>vs.<br><br>META PLATFORMS, INC., f/k/a FACEBOOK, INC., INC.,<br><br>Defendants. | CASE NO. 3:22-cv-04223-JSC<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>The Honorable Jacqueline Scott Corley<br><br>Date: December 1, 2022<br>Time: 10:00 a.m.<br>Courtroom:  8 |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................................. 1

II.     BACKGROUND ................................................................................................................. 3

        A.      Meta Platforms ........................................................................................................ 3

        B.      Epidemic Sound ...................................................................................................... 6

III.    LEGAL STANDARD .......................................................................................................... 9

IV.     ARGUMENT ....................................................................................................................... 9

        A.      Epidemic's Failure to Allege Basic Facts Critical to Its
                Infringement Claims Requires Dismissal of Its Complaint ................................. 10

                1.      Epidemic's Failure to Plead Facts Sufficient to Identify the
                        Infringing Copies Warrants Dismissal for Failure to State a
                        Claim ......................................................................................................... 10

                2.      Epidemic Does Not Plead Sufficient Facts to Permit Meta
                        to Prepare Defenses Specific to the Alleged Conduct ............................. 13

        B.      Epidemic's Failure to Plead Sufficient Facts as to Timing Warrants
                Dismissal of Its Claims for Statutory Damages and Attorney's Fees.................. 15

        C.      At a Minimum,  Epidemic Should Be Required to Provide a More
                Definite Statement Under Rule 12(e) ................................................................... 20

V.      CONCLUSION ................................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*,
  747 F.3d 673 (9th Cir. 2014) ................................................................................ 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................. 9

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
  No. 18-cv-00933, 2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) ........................ 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................. 9

*Blizzard Ent'mt, Inc. v. Lilith Games (Shanghai) Co. Ltd.*,
  149 F. Supp. 3d 1167 (N.D. Cal. 2015) .......................................................... 10, 13

*Brodie v. Jackson*,
  No. 11-cv-1769, 2012 WL 13168397 (D.D.C. July 24, 2012) ...................... 20, 21

*Casanova v. Ulibarri*,
  595 F.3d 1120 (10th Cir. 2010) .......................................................................... 21

*Davis v. Pinterest*,
  No. 19-cv-07650, 2022 WL 1316566 (N.D. Cal. May 3, 2022) .......................... 15

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
  528 F.3d 696 (9th Cir. 2008) .......................................................................... 16, 19

*Farris v. Schlumberger Tech. Corp.*,
  No. 16-cv-0012, 2016 WL 4197572 (D. Alaska Aug. 9, 2016) .......................... 20

*Flava Works, Inc. v. Clavio*,
  No. 11-cv-05100, 2012 WL 2459146, at *2-3 (N.D. Ill. June 27, 2012) ............ 10

*Goatpix LLC v. Upper Deck Co.*,
  No. 21-cv-1815, 2022 WL 2820738, at *4-6 (S.D. Cal. July 19, 2022) .......... 9, 19

*Great Minds v. Office Depot, Inc.*,
  945 F.3d 1106 (9th Cir. 2019) ............................................................................ 11

*Guangzhou Media Am. Co. Ltd. v. iTalk Global Comms. Inc.*,
  No. 17-cv-03323 (C.D. Cal. July 26, 2017) ........................................................ 13

*Hit Bound Music, Ltd. v. BBC Films*,
  No. 16-cv-07125 (C.D. Cal. Dec. 7, 2016) .......................................................... 13

*Lickerish, Inc. v. Alpha Media Grp.*,
  No. 13-cv-00377, 2014 WL 12589641 (C.D. Cal. Jan. 2, 2014) ........................ 16

*Marshall v. Babbs*,
  No. 18-cv-03822, 2019 WL 1557429 (C.D. Cal. Apr. 10, 2019) ........................ 19

*Martin v. Walt Disney Internet Grp.*,
 No. 09-cv-1601, 2010 WL 2634695 (S.D. Cal. June 30, 2010) ........................................ 16

*McGucken v. Chive Media Grp. LLC*,
 No. 18-cv-01612, 2018 WL 3410095 (C.D. Cal. July 11, 2018).................................... 16, 17

*Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*,
 299 F. App'x 509 (6th Cir. 2008) ................................................................................ 10, 11

*Paylor v. Hartford Fire Ins. Co.*,
 748 F.3d 1117 (11th Cir. 2014) ........................................................................................ 21

*Rassamni v. Fresno Auto Spa, Inc.*,
 No. 18-cv-00738, 2018 WL 4616388 (E.D. Cal. Sep. 24, 2018) ........................................ 10

*Reynolds v. Apple Inc.*,
 No. 19-cv-05440, 2019 WL 9654854 (N.D. Cal. Nov. 27, 2019) ........................................ 18

*Smith v. AMC Networks, Inc.*,
 No. 18-cv-03803, 2019 WL 402360 (N.D. Cal. Jan. 31, 2019).......................................... 18

*Smith v. Weeknd*,
 No. 19-cv-2507, 2019 WL 6998666 (C.D. Cal. Aug. 23, 2019) ........................................ 19

*Starr v. Baca*,
 652 F.3d 1202 (9th Cir. 2011) ............................................................................................ 9

*Swierkiewicz v. Sorema N.A.*,
 534 U.S. 506 (2002).......................................................................................................... 20

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC*,
 718 F.3d 1006 (9th Cir. 2013) ............................................................................... 12, 14, 15

*Whittlestone v. Handi-Craft Co.*,
 618 F.3d 970 (9th Cir. 2010) .............................................................................................. 9

*Wongab Corp. v. Nordstrom, Inc.*,
 No. 17-cv-02974, 2017 WL 10439833 (C.D. Cal. Sept. 21, 2017) .................................... 16

*Wright v. Buzzfeed, Inc.*,
 No. 18-cv-02187, 2018 WL 2670642 (C.D. Cal. June 4, 2018).......................................... 17

*Zito v. Steeplechase Films Inc.*,
 267 F. Supp. 2d 1022 (N.D. Cal. 2003) ............................................................................ 16

**STATUTES**

17 U.S.C. § 412 ........................................................................................................... 16, 18, 19

17 U.S.C. § 512 ................................................................................................................. 5, 8, 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

META PLATFORMS INC.'S MOTION TO DISMISS
CASE NO. 3:22-CV-04223-JSC

**OTHER AUTHORITIES**

*Copyright Appeal Form*, Facebook, https://www.facebook.com/help/contact/1653629651334864 (last visited Sep. 25, 2022) ................................................................. 5

*Copyright Enforcement in the Digital Age: When the Remedy Is the Wrong*, 66 UCLA L. Rev. 400 (2019) ................................................................................ 19

*Copyright*, Facebook, https://www.facebook.com/help/1020633957973118/?helpref=hc_fnav (last visited Sep. 19, 2022) ...................................................................................... 5

*Epidemic Sound Publishes its 2021 Annual Report and Sustainability Report*, https://www.epidemicsound.com/press-releases/epidemic-sound-publishes-its-2021-annual-report-and-sustainability-report/ (last visited Sep. 25, 2022) ........................ 6

*Facebook Blueprint*, Facebook, https://www.facebook.com/business/learn/lessons/earn-money-in-stream-ads-videos (last visited Sep. 25, 2022) ........................................................... 4

Homepage, https://www.epidemicsound.com/ (last visited Sep. 25, 2022) ........................ 6, 11

*Instagram Help Center*, Instagram, https://help.instagram.com/270447560766967 (last visited Sep. 25, 2022) ....................................................................................... 5

*Introducing Instagram Reels*, Instagram, https://about.instagram.com/blog/announcements/introducing-instagram-reels-announcement (posted on Aug. 5, 2020) ............................................................................................................. 3

*Meta Page*, Meta, https://about.meta.com/ (last visited Sep. 26, 2022) ........................ 3

*Our License Model*, https://www.epidemicsound.com/our-license-model/ (last visited Sep. 25, 2022) ...................................................................................... 7

*Our Subscriptions*, https://www.epidemicsound.com/pricing/ (last visited Sep. 25, 2022) ................................................................................................................. 6

*Reporting Copyright Infringements*, Facebook, https://www.facebook.com/help/400287850027717 (last visited Sep. 19, 2022) ........................................................ 5

*Rights Manager*, Facebook, https://www.facebook.com/formedia/tools/rights-manager (last visited Sep. 25, 2022) .................................................................... 5

*Share a Reel on* Instagram, *Instagram*, https://help.instagram.com/225519788256708 (last visited Sep. 26, 2022) ........................ 3

*Terms of Service*, Facebook, https://www.facebook.com/terms.ph (last visited Sep. 25, 2022) ...................................................................................................... 4

*Terms of Use*, Instagram, https://help.instagram.com/581066165581870 (last visited Sep. 19, 2022) ...................................................................................... 4

*The Music Catalog*, https://www.epidemicsound.com/music/ (last visited Sep. 25, 2022) ................................................................................................................. 6

*Tools*, Facebook, https://www.facebook.com/creators/tools/earn-money?content_id=sVhW4rvp4ygTaCq&gclid=CjwKCAjwg5uZBhATEiwAhhRLHgShaCdZFpskdGW4ie5t1wY3bkgJbIFDpknUpvranM6Hj7jac2UZzBoCGkMQAvD_BwE (last visited Sep. 25, 2022) ........................................................................... 3

*What is the Oversight Board*, Instagram, https://help.instagram.com/185474462526094?helpref=faq_content&fbclid=IwAR0qyfytYHprGcPOAVlw1CAQk3sqlWXYSYnUD5D35jcugUvRk5SRzWOFsJg (last visited Sep. 25, 2022) ........................................................................................................... 5

**RULES**

Federal Rule Civil Procedure 14(a) ............................................................................. 13

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 1, 9, 20, 21

1

## NOTICE OF MOTION AND MOTION

2        PLEASE TAKE NOTICE that, on December 1, 2022 at 10:00 a.m.,[1] or as soon thereafter

3  as the matter may be heard before the Honorable Jacqueline Scott Corley of the United States

4  District Court for the Northern District of California, at the San Francisco Courthouse, Courtroom

5  8 – 19th Floor, 450 Golden Gate Avenue, San Francisco, California, Defendant Meta Platforms,

6  Inc. ("Meta"), through its undersigned counsel, will, and hereby does, move to dismiss Plaintiff

7  Epidemic Sound, AB's ("Epidemic's") Complaint pursuant to Federal Rule of Civil Procedure

8  12(b)(6), or, in the alternative, for an order requiring Epidemic to provide a more definite statement

9  pursuant to Federal Rule of Civil Procedure 12(e).  Meta's Motion to Dismiss is based on this

10  Notice, the supporting Memorandum of Points and Authorities below, the concurrently-filed

11  Request for Judicial Notice and Exhibits thereto, and any additional material and arguments as

12  may be considered in connection with the Motion.

13

14  Dated:  September 26, 2022             Respectfully submitted,

15                                   LATHAM & WATKINS LLP

16                                 By */s/ Joseph R. Wetzel*
                                      Joseph R. Wetzel

17                                      Allison L. Stillman
                                      Brittany N. Lovejoy

18

19                                   Attorneys for Defendant
                                    *Meta Platforms, Inc.*

20

21

22

23

24

25

26

27

---

28  [1] Due to professional scheduling constraints, December 1 is the first date on the Court's civil law and motion calendar when Meta and its counsel are both available.

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.    INTRODUCTION**

3

Before the Court is a copyright infringement complaint that fails to allege a single specific

4

instance of a copyrighted work being copied.  Plaintiff Epidemic seeks "in no event less than $142

5

million dollars," (Dkt. 1 ¶¶ 64, 71, 78), in a Complaint that is too short on relevant facts—what

6

infringed, where, in what way, since when—to state a claim upon which any relief can be granted,

7

much less one that provides notice to Meta of what the case would be about if it got out of the

8

starting gate.

9

Epidemic alleges that hundreds of its production-music tracks have been used without

10

authorization, by unspecified third parties, in unspecified locations within the vast sea of content

11

lawfully available on Meta's platforms, Facebook and Instagram.  Epidemic does not plead the

12

identity or particular location of even a ***single*** allegedly infringing copy of Epidemic's production

13

music on a Meta property.  It does not, for example, identify in its Complaint the URL, or web

14

address, of a single allegedly infringing copy.  Nor does Epidemic specify how each work it

15

generally alleges has been infringed was copied, where such copying occurred, by whom it was

16

directed, when the infringement began, any information about the dates of publication or

17

registration of each work it contends was infringed—or any other of the basic facts required to

18

state a plausible claim for relief under the Federal Rules of Civil Procedure and the Copyright Act.

19

As courts in the Ninth Circuit and across the country have recognized, the absence of these kinds

20

of specifics is a well-established ground for dismissal of a copyright infringement complaint.

21

As the operator of some of the largest social-media platforms in the world, Meta sees its

22

billions of users create enormous volumes of multimedia posts per day.  Epidemic's abstract

23

allegations that certain of its works are being infringed ***somewhere*** on Meta's platforms are

24

inadequate to state a plausible claim for relief.  That is especially true given the nature of

25

Epidemic's content and licensing model:  Epidemic expressly authorizes its many subscribers to

26

widely use and monetize Epidemic's library of production music, including in content distributed

27

***on Meta's platforms***, without any involvement by Meta.  Accordingly, there are an untold number

28

of fully licensed copies of Epidemic's works on Meta properties at any given time.  Thus, to

plausibly allege infringement, it is not enough for Epidemic to simply say that its tracks *appear* on Meta's platforms; it must provide factual allegations sufficient to identify where Epidemic's tracks allegedly appear without authorization.  Epidemic fails to do that, instead asserting, in a generalized and conclusory fashion, that there is widespread infringement of its works (somewhere) on Meta's platforms.  In these circumstances, Epidemic's lack of specificity regarding the identity and location of the allegedly infringing content renders Epidemic's claims implausible on their face, and makes it impossible for Meta to respond.

Even if the Complaint could be read to state a claim for copyright infringement, it separately fails to state a plausible claim that any alleged infringement occurred during a period of time eligible for statutory damages and attorney's fees—or even falls within the statute of limitations period.  Epidemic blusters repeatedly that Meta's (unidentified) infringement makes it liable for at least $142 million in statutory damages, along with attorney's fees.  But to state a claim for statutory damages and attorney's fees under the Copyright Act, Epidemic must plead facts sufficient to establish that the alleged infringement *of each work asserted* commenced after the asserted work was registered, where the work was registered more than three months following its first publication.  Epidemic has not even attempted to satisfy this requirement; indeed, the sole date it identifies in its Complaint is well outside the Copyright Act's three-year statute of limitations period, and would render every one of Epidemic's asserted works ineligible for statutory damages or attorney's fees under the Copyright Act based on public records regarding the publication and registration dates for the asserted copyrights.

At the very least, these deficiencies require that Epidemic provide a more definite statement under Rule 12(e), identifying with specificity the allegedly infringing content on Meta's platforms, the basis for Epidemic's infringement claim, and the date(s) on which Epidemic alleges Meta's infringement of each asserted work commenced.  The fact that that information does not appear anywhere in the pleadings, however, means that Epidemic's Complaint does not pass muster under Rule 12 and must be dismissed outright.

## II.      BACKGROUND

### A.      Meta Platforms

Meta Platforms is a multinational technology company based in Menlo Park, California, whose mission is to build technologies that help people connect, find communities and grow businesses.[2]  One of the most well-known social media and technology companies in the world, Meta owns and operates, among other things, the widely-used social media platforms Facebook and Instagram.  *See* Dkt. 1 ("Compl.") ¶ 15.  Facebook is a social media platform on which users create personal or commercial profiles with which they can connect with other users and share content.  *Id.*  Instagram is a photo and video sharing social networking service.  *Id.*  Instagram's Reels feature allows users to record and edit up to 90-second multi-clip videos with audio and other effects.[3]  Across its applications, Meta has roughly 2.88 billion daily active users.[4]  Indeed, Facebook alone has over 1.97 billion daily active users, and these numbers have continued to grow year after year.[5]  Facebook and Instagram users continuously create and upload vast amounts of content to the platforms each day.

Meta has long been a pioneer in the social media space, and has led the way among digital platforms in supporting and protecting creators and their content, including through its continued development of features that allow creators to earn money for their content and to police acts of intellectual property infringement.[6]  In particular, In-Stream Ads help creators generate revenue by including short video or image ads in qualifying videos.  Eligible creators may receive a share

---

[2] *See About Meta Page*, Meta, https://about.meta.com/ (last visited Sep. 26, 2022).

[3] *See Introducing Instagram Reels*, Instagram, https://about.instagram.com/blog/announcements/introducing-instagram-reels-announcement (posted on Aug. 5, 2020); *Share a Reel on* Instagram, *Instagram*, https://help.instagram.com/225190788256708 (last visited Sep. 26, 2022) ("Reels allows you to record and edit short videos up to 90 seconds in the Instagram Camera. You can add effects and music to your reel or use your own original audio.").

[4] Meta 2022 Second Quarter Earnings Report, *available at* https://s21.q4cdn.com/399680738/files/doc_financials/2022/q2/Meta-06.30.2022-Exhibit-99.1-Final.pdf.

[5] *Id.*

[6] *See Tools*, Facebook, https://www.facebook.com/creators/tools/earn-money?content_id=sVhW4rvp4ygTaCq&gclid=CjwKCAjwg5uZBhATEiwAhhRLHgShaCdZFpskdGW4ie5t1wY3bkgJbIFDpknUpvranM6Hj7jac2UZzBoCGkMQAvD_BwE (last visited Sep. 25, 2022).

1  of the revenue from the video ads shown to the viewers.[7]  Meta is also known to take the intellectual

2  property rights of its creators seriously.  It has been at the forefront of building technology and

3  features that assist in the monitoring, detection and resolution of infringement issues, including

4  with respect to audio content available on its platform—as described further below.

5      Epidemic's Complaint relates to the audio used in some, unidentified videos on Meta's

6  platforms.  The audio component of those unnamed videos allegedly originates from one of two

7  sources:  either it is part of an original user video uploaded by the user ("user-generated content"

8  or "UGC"), or it is made available in Meta's audio catalog ("Meta's Audio Library") for users to

9  select to incorporate into their video content.  With respect to user-generated content, Instagram

10  Reels offers a feature titled "Original Audio" that allows Instagram users to click into the original

11  audio contained in user-uploaded videos—specifically, audio that did not originate from Meta's

12  Audio Library or otherwise match to audio Meta has licensed—and then: (1) "save" the audio

13  track into a library accessible on Instagram from which the audio can be played; and/or (2) create

14  a new Reel that uses that same audio content.  Similarly, the Reels "Remix" function allows a user

15  to put a new audiovisual clip either beside or after the other user's Reel, and then share that new

16  combined Reel (with the prior user's Reel embedded in it) in their feed.

17      Audio content uploaded as UGC and used by other users as described above is done so

18  pursuant to terms of use.  Instagram's Terms of Use provide that when users "share, post, or upload

19  content that is covered by intellectual property rights" they "grant to [Meta] a non-exclusive,

20  royalty-free, transferable, sub-licensable, worldwide license to host, use, distribute, modify, run,

21  copy, publicly perform or display, translate, and create derivative works of your content (consistent

22  with [the user's] privacy and application settings)."[8]  Facebook's Terms of Service provide the

23  same.[9]  Both Instagram's and Facebook's terms also contain clear language prohibiting users from

24

---

25  [7] *See Facebook Blueprint*, Facebook, https://www.facebook.com/business/learn/lessons/earn-money-in-stream-ads-videos (last visited Sep. 25, 2022).

26  [8] *Terms of Use*, Instagram, https://help.instagram.com/581066165581870 (last visited Sep. 19, 2022).

27  [9] *See Terms of Service*, Facebook, https://www.facebook.com/terms.ph (last visited Sep. 25,

28  2022).

using the services to do or share anything that "infringes or violates someone else's rights, including intellectual property rights (such as by infringing another's copyright or trademark)" and encourage users to report content and conduct that they feel violates their intellectual property rights.[10]

The content in Meta's Audio Library is sourced directly from audio content providers pursuant to license agreements in which the providers stand behind the content they provide and grant to Meta the necessary rights to use the content in connection with Meta's platforms and their respective features.  All audio incorporated into a user's video from the Meta Audio Library is attributed or linked to the artist and includes the name of the track, to the extent it has been supplied by the content provider.[11]

Meta also maintains best practices with respect to the Digital Millennium Copyright Act ("DMCA").  *See* 17 U.S.C. § 512.  Meta's robust notice-and-takedown policies and procedures include a well-publicized designated agent registered with the U.S. Copyright Office, and protocols and infrastructure that facilitate expeditious response to takedown notices for UGC.[12] These protocols also include an appeals process for creators who feel their content has been erroneously blocked or taken down.[13]

Above and beyond these measures, Meta's proprietary Rights Manager tool is a highly-sophisticated copyright management technology that allows rights holders to upload reference files of their copyrighted works, and then uses the reference files to scan and detect audio, video or

---

[10] *Id.*

[11] *See*, *Instagram Help Center*, Instagram, https://help.instagram.com/270447560766967 (last visited Sep. 25, 2022).

[12] *See, e.g.*, *Reporting Copyright Infringements*, Facebook, https://www.facebook.com/help/400287850027717 (last visited Sep. 19, 2022) (providing information regarding Meta's designated agent, and step-by-step help in reporting a copyright infringement claim).

[13] *See, e.g.*, *Copyright Appeal Form*, Facebook, https://www.facebook.com/help/contact/1653629651334864 (last visited Sep. 25, 2022) (providing an appeals form for Facebook users); *Copyright*, Facebook, https://www.facebook.com/help/1020633957973118/?helpref=hc_fnav (last visited Sep. 19, 2022) (explaining the review and appeal process for content taken down off Instagram); *see also What is the Oversight Board*, Instagram, https://help.instagram.com/185474462526094?helpref=faq_content&fbclid=IwAR0qyfytYHprGcPOAVlw1CAQk3sqlWXYSYnUD5D35jcugUvRk5SRzWOFsJg (last visited Sep. 25, 2022) (providing information about Instagram's Oversight Board).

1   image content across the platforms that match those works.[14]  Meta offers Rights Manager to all

2   eligible rights holders in order to assist with their efforts in monitoring the use of their content by

3   users of Meta's properties.[15]

4   **B.      Epidemic Sound**

5   Epidemic Sound is a production music company whose business model leverages social

6   media and other digital platforms such as those Meta has created.  Epidemic amasses rights to

7   background music and sound effects (as distinguished from popularly-released music one might

8   hear on the radio), and then licenses that production-music content in subscriptions to individuals

9   or businesses for incorporation into the background of video content, television and film

10   productions, or other media.  *See* Compl. ¶ 3.  Epidemic licensees then share (*i.e.*, reproduce,

11   distribute and perform) and monetize that content through various distribution channels, including

12   on digital platforms such as Instagram and Facebook.[16]  In fact, Epidemic's website specifically

13   highlights Facebook and Instagram in order to persuade potential customers to subscribe to its

14   catalog, promising that Epidemic's content will "Make your stories pop" on Facebook, and will

15   allow Epidemic customers' videos to "Stand out in the feed" on Instagram:[17]

16   //

17   //

18   //

19   //

---

20   [14] *See, e.g.*, *Rights Manager*, Facebook, https://www.facebook.com/formedia/tools/rights-
21   manager (last visited Sep. 25, 2022).

   [15] *Id.*

22   [16] *See* Compl. ¶ 3; *see also The Music Catalog*, https://www.epidemicsound.com/music/ (last
23   visited Sep. 25, 2022) ("Royalty free music for all digital platforms, YouTube video, Twitch
   streaming, podcasts, you name it."); *Our Subscriptions*, https://www.epidemicsound.com/
24   pricing/ (last visited Sep. 25, 2022) (subscription to Epidemic Sound's catalog allows customer
   to "[p]ublish content to your own social media channels" and "[m]onetize content across
25   YouTube, Facebook, Instagram, TikTok, Twitch, and podcasts.").

   [17] Homepage, https://www.epidemicsound.com/ (last visited Sep. 25, 2022); *see also Epidemic
26   Sound Publishes its 2021 Annual Report and Sustainability Report*,
   https://www.epidemicsound.com/press-releases/epidemic-sound-publishes-its-2021-annual-
27   report-and-sustainability-report/ (last visited Sep. 25, 2022) ("The company has democratized
   access to music for storytellers. Its innovative digital rights model paves the way for creators -
28   everyone from YouTubers to small businesses to the world's largest brands - to use *restriction-
   free music* to take their content to the next level . . ." (emphasis added)).

Epidemic subscribers pay Epidemic for the express purpose of using Epidemic content in videos posted on Meta's platforms and elsewhere, through a license to reproduce, distribute, perform, and make derivative works using the Epidemic music content.[18]  Although Epidemic may ultimately hold "exclusive reproduction, distribution, and public performance rights" in its production-music content, Compl. ¶¶ 68, 75, its business is predicated on the widespread licensing of those same rights to every one of its subscribers and customers.

Nevertheless, Epidemic has repeatedly approached Meta with licensing demands, ostensibly for the same type of usage already licensed by Epidemic's subscribers.  *See* Compl. ¶¶ 2, 48, 57.  Citing Meta's licenses with the largest record labels and music publishers in the industry as evidence that Meta "requires a license" from Epidemic, Compl. ¶ 57, Epidemic ignores the fundamental differences between Epidemic and these other content owners, which, unlike Epidemic, do not make their content available "restriction free," or "free to use . . . without paying additional fees or royalties" to unlimited numbers of subscribers.

This is an important distinction, as evidenced by Epidemic's own purported enforcement efforts.  To the extent that Epidemic has "provided Meta with representative lists of **its** content being infringed," as it alleges, Compl. ¶ 48 (emphasis added), Epidemic has not specifically (or

---

[18] *See Our License Model*, https://www.epidemicsound.com/our-license-model/ (last visited Sep. 25, 2022) ("With our music licenses you're free to use the music without having to worry about paying additional fees or royalties.  Forget synchronization rights, mechanical rights and public performance rights – we offer all rights included.").

even generally) identified the content on Meta's platforms that it claims ***to be infringing***.  *Id.* Epidemic's Complaint includes no allegation that it has ever sent Meta a takedown notice through Meta's DMCA-complaint channels to address the purported widespread infringement it alleges. *See* 17 U.S.C. § 512(c)(3).  Meta cannot be expected to identify infringing copies of user-generated content from the general allegations Epidemic has provided, especially given the widespread licensed use of Epidemic's content on Meta's platforms.  Similarly, Epidemic does not allege which of its works it alleges are infringed by content in Meta's Audio Library (as opposed to elsewhere on the platforms), nor does it identify which tracks in Meta's Audio Library allegedly infringe upon Epidemic's works.[19]  Compl. ¶¶ 26-29.  Instead, it filed this lawsuit merely alluding to unspecified acts of infringement.

Epidemic also complains that it has not been given access to a specific, bespoke rights-management tool that Meta has created for, and provides to, certain of its licensor-partners (which, as noted above, are not similarly situated to Epidemic, as they do not indiscriminately license their works to Meta's users).  *See, e.g.*, Compl. ¶¶ 45-47.  But Epidemic admits that it has access to Rights Manager, Meta's rights management tool for video content, Compl. ¶ 45, just not a different version of that tool it claims it needs in order to "monitor and protect its music on Meta's platforms at scale."  *Id.*  That assertion is not only legally irrelevant (as Epidemic has no legal right to any version of a proprietary rights management tool designed by Meta for use under private contracts), but is also belied by Epidemic's other allegations purporting to identify "[a]pproximately 50,000 infringing videos and 30,000 new uploads containing Epidemic's music" "uploaded to Facebook and Instagram, respectively, on a daily basis"—"approximately 94%" of which is "unlicensed and thus infringing."  *Id.* ¶ 8.  Epidemic seemingly claims to have no difficulty at all identifying purportedly unlicensed content on Meta's platforms—making it all the more glaring (and telling) that Epidemic has failed to identify ***a single specific alleged act of infringement*** in its Complaint.

---

[19] Prior to this lawsuit being filed, Meta investigated over 100 tracks listed by Epidemic and found only ***two*** in its Music Library, both of which were distributed to Meta pursuant to agreements in which Meta's music-licensor partners represented and warranted that they had the necessary rights to that content.  When Meta asked if Epidemic would like Meta to remove those two tracks from the library, Epidemic did not confirm that the tracks should be removed.

### III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Under this standard, a claim is plausible where a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but not where the factual allegations are subject to "more likely explanations." *Id.* at 678, 681.   Although the federal pleading standard under Rule 8 is liberal, it nonetheless demands that a plaintiff "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   More specifically, the plaintiff's allegations must "enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).   In the Ninth Circuit, Rule 12(b)(6) also applies to address legally deficient claims for damages at the pleading stage. *Whittlestone v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010); *see also Goatpix LLC v. Upper Deck Co.*, No. 21-cv-1815, 2022 WL 2820738, at *4-6 (S.D. Cal. July 19, 2022) (granting defendant's Rule 12(b)(6) motion to dismiss plaintiff's request for statutory damages and attorney's fees where plaintiff failed to allege facts distinguishing defendant's post-registration conduct from its pre-registration conduct).

### IV.   ARGUMENT

The lack of specificity in Epidemic's Complaint is striking:  For all its bluster, Epidemic has failed to identify even a single allegedly infringing copy of any of its works on Meta's platforms.   That deficiency—along with the absence of other basic facts such as the dates of registration, publication, and the commencement of the alleged infringement—dooms the Complaint.   Meta respectfully requests that the Court dismiss Epidemic's Complaint, or, alternatively, require Epidemic to provide a more definite statement that enables Meta to investigate Epidemic's  claims, to answer, and to formulate appropriate defenses.

A.   **Epidemic's Failure to Allege Basic Facts Critical to Its Infringement Claims Requires Dismissal of Its Complaint**

1.   Epidemic's Failure to Plead Facts Sufficient to Identify the Infringing Copies Warrants Dismissal for Failure to State a Claim

District courts in this Circuit and around the country have dismissed copyright claims where the plaintiff failed to allege specific facts about the alleged infringement, including the identity of the purportedly infringing copies and the manner of infringement.  *See, e.g.*, *Blizzard Ent'mt, Inc. v. Lilith Games (Shanghai) Co. Ltd.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015) (dismissing complaint whose "sweeping allegations fail[ed] to apprise [defendant] or the Court of which [of defendant's video game] characters infringe *which* characters from *which* of [plaintiffs'] numerous games, related products and merchandise"); *Rassamni v. Fresno Auto Spa, Inc.*, No. 18-cv-00738, 2018 WL 4616388, at *3-4 (E.D. Cal. Sep. 24, 2018) (granting motion to dismiss because the complaint contained "no allegations as to how Defendants unlawfully appropriated the Copyrighted Materials, such as the forms in which the materials were reproduced, how the materials were used, or the timeframe of the reproduction"); *see also Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008) (affirming dismissal where plaintiff's complaint failed to identify specific works by defendants that infringed on plaintiff's copyright); *Flava Works, Inc. v. Clavio*, No. 11-cv-05100, 2012 WL 2459146, at *2-3 (N.D. Ill. June 27, 2012) (granting motion to dismiss where plaintiff failed to "identify[ ] the actual work that is being infringed and the means of its copying and/or distribution," and requiring any amended complaint to "clarify the exact nature of the alleged infringing conduct").

Epidemic's Complaint does not identify even a single concrete example of any content on Meta's expansive platforms that purportedly infringes Epidemic's copyrights.  Epidemic does not, for example, identify in its Complaint the URL, or web address, of any infringing copy.  Instead, Epidemic alleges generally that "upon information and belief, there are currently nearly 1000 of Epidemic's tracks that are being stored, curated, reproduced, distributed, and/or otherwise exploited by Meta through its music library *or* its content copying tools, Original Audio and Reels Remix."  Compl. ¶ 7 (emphasis added); *see also* Compl. ¶ 26 ("Epidemic knows of over 950 of its music tracks . . .  that have been reproduced, stored, made available to, and distributed to its users

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

by Meta through its Music Library *or* through its other content sharing tools without a license" (emphasis added)).  Those allegations raise more factual questions than they answer.  What is the specific content on Meta's platforms that allegedly infringes each Epidemic work?  Where on Meta's platforms are the allegedly infringing copies located?  When, where, how, and by whom were the allegedly infringing copies added to Meta's platforms?  Are the allegedly infringing copies part of UGC, and if so, which UGC?  Are the allegedly infringing tracks stored in Meta's Audio Library, and if so, which tracks?  When did Epidemic first identify the infringements, and what, if anything, did Epidemic do with the tools Meta already has provided it to address each one, or provide Meta notice of that allegedly infringing content?  Because Facebook and Instagram are massive platforms where billions of users upload UGC every single day (including large volumes of content that is *expressly authorized* by Epidemic), the Complaint's lack of any specific facts regarding where on those platforms the allegedly infringing content can be found makes it impossible for Meta to investigate and address the allegations.  In stating only that "on information and belief" Epidemic's tracks are being "stored, curated, reproduced, distributed, and/or otherwise exploited" by Meta, Compl. ¶ 7, Epidemic "failed to allege which, if any, of [Meta's] materials were infringing" and thus "did no more than plead bare legal conclusions." *Nat'l Bus. Dev. Servs.*, 299 F. App'x at 512.  Epidemic's Complaint falls well short of the minimum requirements to survive dismissal.

The Complaint's failure to identify specific alleged infringements is particularly problematic in light of the nature of Epidemic's business model and of production music generally.  As noted, Epidemic grants broad licenses to its subscribers expressly for use of its works in content shared on Facebook and Instagram.[20]  As a result, it is impossible for Meta to tell whether any given use of an Epidemic work on Meta's platforms was expressly or impliedly licensed—and therefore is non-infringing.  *See Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) (holding that an infringement claim "fails if the challenged use of the work falls within the scope of a valid license").  Thus, even if Meta were to attempt to search the vast universe of content on its platform for every Epidemic track listed in Exhibit A based on the limited information

---

[20] *See* Homepage, https://www.epidemicsound.com/ (last visited Sep. 25, 2022).

provided, it would have no way to tell whether the uses it could identify were ones that Epidemic's subscribers have already paid for (and which Epidemic is presumably not targeting with its allegations in this suit), or whether they even happen to be the specific uses that are the subject of Epidemic's Complaint. *Cf.* Compl. ¶ 39 n.1 (acknowledging such authorized uses). Meta cannot be expected to identify which uses of background music in any given videos are subject to license agreements and which ones are not (but may be covered by other defenses). Because Epidemic's pleading does not identify the specific infringing conduct it asserts for each work, Meta lacks sufficient notice to respond to Epidemic's claims.

Epidemic's failure to distinguish alleged infringements of its works in Meta's Audio Library, on the one hand, from alleged infringements occurring through the Reels Remix and Original Audio tools, on the other, is similarly problematic. To the extent the only infringing conduct Epidemic alleges for any given work is Meta users' posting and re-sharing of that work via the Reels Remix and/or Original Audio tools, Meta would have recourse, among other defenses, to the safe harbor available to online service providers under the DMCA for infringing content stored at the direction of users. *See, e.g.*, *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1017-20 (9th Cir. 2013) (recognizing that section 512(c) of the DMCA "presupposes that service providers will provide access to users' stored material" and that "there is no limitation on the service provider's ability to modify user-submitted material to facilitate . . . access" by other users). But the level of generality at which Epidemic has framed its allegations does not permit Meta to identify what specific conduct Epidemic is complaining of or to formulate its presumed DMCA (or other) defenses as to particular instances of infringement—as discussed further below.

Yet another problem with Epidemic's abstract pleadings is its failure to identify the tracks appearing in Meta's Audio Library that it claims are infringing. All music in Meta's library is sourced from third parties who deliver it to Meta with the necessary rights in the delivered content. Since Epidemic has not alleged any specific instances of infringing content in the Audio Library, Meta is unable to work with its partners to identify the bona fide owner(s) of the content to which Epidemic objects. This is no mere technicality. To the extent that Epidemic is claiming that certain

of Meta's content provider licensors are providing content to Meta's Audio Library that they have somehow stolen from Epidemic (which seems to be the thrust of Epidemic's theory regarding the Audio Library—though it is not entirely clear from the Complaint), then Meta may need to implead those content providers who are claiming the content as their own.  *See* Fed. R. Civ. P. 14(a) ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."); *see also* Third-Party Complaint of Defendant iTalkTV Hong Kong, *Guangzhou Media Am. Co. Ltd. v. iTalk Global Comms. Inc.*, No. 17-cv-03323 (C.D. Cal. July 26, 2017), Dkt. No. 47 (impleading third-party content distributor on grounds distributor warranted it had requisite licenses); Third-Party Complaint, *Hit Bound Music, Ltd. v. BBC Films*, No. 16-cv-07125 (C.D. Cal. Dec. 7, 2016), Dkt. No. 21 (similar).  It goes without saying that Meta cannot implead the correct parties (or, at a minimum, invoke indemnity rights that may implicate rights to control costs or other aspects of litigation) if it cannot identify the content that is at issue.

In the context of the world's leading social media platforms, which host an enormous amount of user-generated content, and on which Epidemic expressly authorizes use of its music, Epidemic's general, sweeping allegations that infringing copies exist ***somewhere*** on the platform fail to put Meta on notice of its claims.  Ultimately, without any identifying details as to the particular instances of infringement Epidemic alleges, Meta is left to try to guess which specific conduct Epidemic complains of and the circumstances that apply in each case.  Epidemic's deficient pleadings therefore leave Meta unable to adequately investigate and prepare its defenses.  Accordingly, Epidemic has not stated a plausible claim for relief, and its Complaint should be dismissed.  *See Blizzard Ent'mt*, 149 F. Supp. 3d at 1175-76 (finding that absent any allegations as to specific acts of infringement, "the Court cannot meaningfully evaluate the plausibility of Plaintiffs' allegations regarding the appropriation of Plaintiffs' copyrighted . . . content").

2. Epidemic Does Not Plead Sufficient Facts to Permit Meta to Prepare Defenses Specific to the Alleged Conduct

A practical effect of Epidemic's failure to plead adequate facts to support a plausible claim is that it limits Meta's ability to evaluate and assert defenses specific to the particular conduct to

which Epidemic objects. Depending on which specific content on Meta's platforms is the subject of Epidemic's claims, Meta could raise any number of possible defenses in response. Those potential defenses include, but are not limited to, that the complained-of use is authorized by express or implied license, that the conduct constitutes fair use, that the application tools at issue are capable of substantial non-infringing uses, or, importantly, that Meta is insulated from monetary liability for the complained-of use by the DMCA.

To expand on just this last example of why the absence of specifics matters: Without knowing what particular content forms the basis for Epidemic's infringement allegations, Meta cannot assess the application of its DMCA safe-harbor protections to Epidemic's allegations. As discussed above, the DMCA shields online service providers who comply with its requirements from monetary liability for copyright infringement "by reason of the storage at the direction of a user" of infringing content on their systems. 17 U.S.C. § 512(c)(1); *UMG*, 718 F.3d at 1017-20. In Meta's case, that means it cannot be held monetarily liable for UGC (including user-generated audio content in Reels) that may infringe Epidemic's copyrights, provided that it lacks actual or red-flag knowledge of any specific instances of infringement, responds expeditiously to compliant takedown notices, and otherwise continues to conform to the DMCA's requirements.

Epidemic focuses a significant portion of the Complaint on describing the functionality of Instagram in connection with user-generated audio that is shared by other users on Meta's platforms as "Original Audio" and/or via the Reels Remix function. Epidemic's argument appears to be that, because Meta has provided functions that allow users to access and re-post other users' audio as part of new user-generated content, any infringing content shared by way of those features is not stored at the direction of Meta's users, and is therefore not immunized by the DMCA's safe harbor. *See* Compl. ¶ 9 ("These infringing uses are not merely users posting infringing works that Meta has failed to take down – as Meta would like to believe and as it will undoubtedly tell this Court."); *id.* ¶ 40 ("Upon information and belief, for both [Reels Remix and Original Audio], Meta has created unauthorized reproductions of Epidemic's Tracks and other music content in order to allow subsequent users to incorporate the Tracks into their own content."). To the extent that is Epidemic's argument, it is unavailing. It is well established in the Ninth Circuit that functions

1    implemented by an online service provider that "automatically process[] user-submitted content

2    and recast it in a format that is readily accessible to its users" do not deprive it of the DMCA's

3    protections. *UMG*, 718 F.3d at 1019-20.  Consequently, the fact that Meta offers features that

4    allow users to access, re-post, and "remix" audio content contained in other users' Reels does not

5    destroy Meta's safe harbor protection under the DMCA.  Regardless of what tools or automated

6    back-end systems facilitate user access and engagement with Reels audio content, any allegedly

7    infringing user-uploaded audio re-shared through the Reels Remix and Original Audio features

8    exists on Meta's platforms by virtue of a user putting it there.  *See Davis v. Pinterest*, No. 19-cv-

9    07650, 2022 WL 1316566, at *15 (N.D. Cal. May 3, 2022) ("Plaintiff's works appear on Pinterest

10   because users upload them"); *UMG*, 718 F.3d at 1020 (defendant not deprived of DMCA's

11   protections where "automated process for making files accessible is initiated entirely at the volition

12   of [defendant's] users").

13          Epidemic's conclusory allegations that Meta is liable for "creating features which allow

14   and encourage users to easily reproduce and synchronize Epidemic's music," Compl. ¶ 9, thus

15   amount to a generalized product design critique, rather than a plausible claim of copyright

16   infringement.  Moreover, Epidemic's abstract and high-level pleadings are devoid of any facts that

17   would allow Meta to investigate specific instances of alleged infringement, to evaluate whatever

18   basis Epidemic has for its claims regarding UGC, and to establish the applicability of the DMCA's

19   protections and other relevant defenses.  For these reasons, and those discussed above, the

20   Complaint should be dismissed.

21          **B.      Epidemic's Failure to Plead Sufficient Facts as to Timing Warrants**
22                  **Dismissal of Its Claims for Statutory Damages and Attorney's Fees**

23          The Complaint's glaring deficiencies regarding the accused works and the manner in which

24   they infringe Epidemic's works (which, on their own, warrant dismissal) present further issues in

25   light of the remedies sought by Epidemic's Complaint.  By omitting any specific allegations as to

26   timing, Epidemic fails to state a plausible claim that it is eligible for statutory damages and

27   attorney's fees with respect to any of the asserted works.

28

1    Under Section 412 of the Copyright Act, a plaintiff cannot recover an "award of statutory

2    damages or of attorney's fees" for "any infringement of copyright commenced after first

3    publication of the work and before the effective date of its registration, unless such registration is

4    made within three months after the first publication of the work." 17 U.S.C. § 412. Put more

5    simply, "[r]egistration prior to infringement or, if the work is published, within three months of

6    publication, is necessary for an owner to obtain statutory damages and attorneys' fees." *Alaska*

7    *Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 678 (9th Cir. 2014). Statutory

8    damages and attorney's fees are not recoverable even if a second or continuing infringement occurs

9    after registration, when the initial infringement of the work at issue began before the copyright

10   owner registered the already-published work. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d

11   696, 700-701 (9th Cir. 2008) ("Every court to consider the issue has held that infringement

12   'commences' for the purposes of § 412 when the first act in a series of acts constituting continuing

13   infringement occurs.").

14   At the motion to dismiss stage, a court "has the authority to decide whether [p]laintiff has

15   stated a claim for statutory damages and attorney's fees." *Martin v. Walt Disney Internet Grp.*,

16   No. 09-cv-1601, 2010 WL 2634695, at *3 (S.D. Cal. June 30, 2010). As a prerequisite to these

17   types of monetary recovery, the plaintiff must identify the dates of three events: (1) when

18   infringement commenced; (2) when the copyright was registered; and (3) when the work was first

19   published. *Lickerish, Inc. v. Alpha Media Grp.*, No. 13-cv-00377, 2014 WL 12589641, at *5 (C.D.

20   Cal. Jan. 2, 2014) (citing *Zito v. Steeplechase Films Inc.*, 267 F. Supp. 2d 1022, 1024-26 (N.D.

21   Cal. 2003)). Indeed, where a plaintiff fails to include any information about the dates of

22   registration or publication of its copyrighted works or the date of alleged infringement, courts find

23   that the plaintiff "has failed to properly plead facts sufficient for a prayer of statutory damages."

24   *McGucken v. Chive Media Grp. LLC*, No. 18-cv-01612, 2018 WL 3410095, at *5 (C.D. Cal. July

25   11, 2018) (citing *Lickerish*, 2014 WL 12589641, at *6); *see also Becton, Dickinson & Co. v. Cytek*

26   *Biosciences Inc.*, No. 18-cv-00933, 2020 WL 1877707, at *7 (N.D. Cal. Apr. 15, 2020) (finding

27   plaintiff "failed to adequately plead entitlement to statutory damages or attorney's fees" where it

28   identified only a vague "timeframe of at least some of [defendant]'s infringement" but did not

1   allege the date the alleged infringement commenced); *Wongab Corp. v. Nordstrom, Inc.*, No. 17-

2   cv-02974, 2017 WL 10439833, at *7 (C.D. Cal. Sept. 21, 2017) (dismissing claims for statutory

3   damages and attorney's fees where plaintiff "merely assert[ed] it registered [the design at issue]

4   with the U.S. Copyright Office (without providing a copy of the registration certificate), . . . and

5   sold fabric bearing the subject design before Defendant's alleged infringement").

6        Here, Epidemic does not plead any facts whatsoever about (1) the date on which each of

7   the asserted works was registered, (2) the date on which each of the asserted works was first

8   published, or (3) the date Meta's alleged infringement of each work commenced.  There is no

9   reason Epidemic could not have pleaded such dates.  Assuming, *arguendo*, that Epidemic is the

10  owner of the asserted works, the dates of copyright registration and publication are necessarily

11  within Epidemic's possession and control.  And the dates of the alleged infringement are not

12  "particularly within [Meta's] possession and control," given that Epidemic claims the alleged

13  infringement has occurred on a "single, publicly accessible website."[21]  *Wright v. Buzzfeed, Inc.*,

14  No. 18-cv-02187, 2018 WL 2670642, at *3 (C.D. Cal. June 4, 2018).  Additionally, Epidemic must

15  have a basis, consistent with Rule 11 of the Federal Rules of Civil Procedure, for alleging

16  infringement and seeking statutory damages and attorney's fees as to each and every work asserted.

17  In order for Epidemic to have had the requisite factual basis to bring claims seeking that relief,

18  given the requirements of Section 412, it would have had to undertake a reasonable investigation

19  prior to suit, which would have entailed identifying the dates of registration, publication, and

20  alleged infringement for each work.  At the very least, the absence of those dates from its

21  Complaint means that Epidemic has "failed to properly plead facts sufficient for a prayer of

22  statutory damages."  *McGucken*, 2018 WL 3410095, at *5.

23       Indeed, even the limited information Epidemic **has** alleged suggests that Epidemic is

24  ineligible for statutory damages for most, if not all, of the asserted works.  Although Epidemic did

25  not plead the registration or publication dates for any of the works it claims Meta infringed, it did

26  identify copyright registration numbers in Exhibit A attached to its Complaint.  *See* Dkt. 14

27

28  [21] In fact, since Epidemic has not identified for Meta even representative examples of infringing copies, the dates any such alleged infringements commenced are not "within [Meta's] possession and control" at all.

(Corrected Ex. A to Compl.).  The Court can take judicial notice of records contained in the Copyright Office's official public catalog that correspond to those registration numbers.  *See, e.g.*, *Smith v. AMC Networks, Inc.*, No. 18-cv-03803, 2019 WL 402360, at *4 (N.D. Cal. Jan. 31, 2019); *Reynolds v. Apple Inc.*, No. 19-cv-05440, 2019 WL 9654854, at *2 (N.D. Cal. Nov. 27, 2019). Here, those registration records reveal that none of the works was registered within even **six** months after the publication date listed on the registration, let alone within three months.  *See* Declaration of Brittany N. Lovejoy in Support of Meta's Request for Judicial Notice ("Lovejoy Decl."), Exs. A, B.[22]  Since the works were not registered within three months of first publication, Epidemic needs to have registered the works prior to the commencement of the alleged infringement in order to seek statutory damages or attorney's fees.  17 U.S.C. § 412.  That is implausible on the face of the Complaint.  The only date in Epidemic's Complaint that could generously be construed as the date the alleged infringement commenced is November 2017, when Epidemic alleges it contacted Meta regarding its claims.  *See* Compl. ¶ 48.  Aside from being outside the Copyright Act's three-year limitations period (17 U.S.C. § 507), November 2017 is more than two years before even the earliest registration date for any of the asserted works: December 1, 2019.  *See* Lovejoy Decl. Ex. B, Row No. 775.  The work registered in December 2019 is the only work listed in Exhibit A to the Complaint that was registered prior to December ***2021***; the majority of the asserted works were not registered until May or June 2022, just before Epidemic filed this lawsuit.  *See id.*

In the absence of any other information about the date the alleged infringement of each asserted work commenced, Epidemic has not adequately pleaded that the works were registered prior to the commencement of infringement—let alone that any infringement commenced within the limitations period.  As a result, it has not pleaded facts sufficient to support a claim for entitlement to statutory damages and attorney's fees, even if the underlying infringement claims are not barred entirely by the statute of limitations.  Again, this deficiency is no mere technicality: Epidemic's complaint repeatedly seeks to leverage the potential award of attorney's fees and up

---

[22] Concurrent with its filing of this Motion, Meta has filed a Request for Judicial Notice requesting that the Court take notice of these materials.

to \$150,000 per work infringed, or "at least \$140 million" in statutory infringement damages, damages that far exceed the actual harm allegedly suffered by Epidemic, which licenses its ***entire catalog for unlimited use on social media for \$9.99 a month***.  *See* Ben Depoorter, *Copyright Enforcement in the Digital Age: When the Remedy Is the Wrong*, 66 UCLA L. Rev. 400, 415-16 & n.63 (2019) (observing that the "shadow of these [enhanced statutory damages] numbers may loom large over disputes" and "can set in motion a one-way ratchet effect towards more generous settlements").  Epidemic's bare-bones pleading does not plausibly state facts sufficient to entitle it to such relief.

Nor does the Complaint contain any allegation that there were separate or distinct infringements after the works were registered with the Copyright Office that were in any way different in kind than the alleged infringement Epidemic contends that Meta was on notice of since 2017.  In the Ninth Circuit, "the first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412."  *Derek Andrew*, 528 F.3d at 701.  Where that "series of ongoing infringements of the same kind" begins before registration, Section 412 "***eliminates the possibility*** for the recovery of statutory damages and attorneys' fees."  *Smith v. Weeknd*, No. 19-cv-2507, 2019 WL 6998666, at \*7 (C.D. Cal. Aug. 23, 2019) (emphasis added).  That is because allowing a plaintiff to recover statutory damages and attorney's fees "where an infringing act occurs before registration and then reoccurs thereafter clearly would defeat the dual incentives of § 412," *i.e.*, to encourage copyright owners to register promptly and potential infringers to check the registration database.  *Derek Andrew*, 528 F.3d at 700.  Thus, to avoid dismissal, Epidemic would need to have alleged that for each Epidemic work there was a new infringing act after the date of registration that was different in kind (that is, "separate and distinct") from any conduct by Meta (or its users or content providers) with respect to that work before it was registered.  In the absence of any such allegations, "any statutory damages or attorneys' fees are impermissible under Section 412."  *Goatpix*, 2022 WL 2820738, at \*6; *see also Smith*, 2019 WL 6998666, at \*7 (holding that because plaintiffs did not identify any post-registration infringement, plaintiffs could not recover statutory damages or attorney's fees even if they eventually prevailed on their claims, and dismissing the complaint's prayers for such

1   relief without leave to amend); *Marshall v. Babbs*, No. 18-cv-03822, 2019 WL 1557429, at *4

2   (C.D. Cal. Apr. 10, 2019) (where complaint established same work was infringed by same party

3   both before and after registration, Section 412 barred attorney's fees and statutory damages as a

4   matter of law).   Accordingly, Epidemic's failure to allege any "separate and distinct" post-

5   registration infringements is further grounds for dismissal of its claims for statutory damages and

6   attorney's fees.

7
8
   **C.     At a Minimum,  Epidemic Should Be Required to Provide a More Definite
            Statement Under Rule 12(e)**

9        The Court should grant Meta's motion to dismiss Epidemic's Complaint for all of the

10   reasons described above.  But to the extent the Court declines to dismiss the Complaint outright

11   for any reason, Epidemic should at least be required to provide a more definite statement under

12   Federal Rule of Civil Procedure 12(e), identifying at least: (1) the date(s) on which Epidemic

13   alleges Meta's infringement of each work in Exhibit A to its Complaint commenced; and (2) the

14   specific manner and location(s) of alleged infringement for each work identified in Exhibit A.

15        Under Rule 12(e), the defendant may move for a more definite statement when the

16   complaint "is so vague or ambiguous that a party cannot reasonably be required to frame a

17   responsive pleading." Fed. R. Civ. P. 12(e).  In other words, "[i]f a pleading fails to specify the

18   allegations in a manner that provides sufficient notice, a defendant can move for a more definitive

19   statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514

20   (2002); *see also Farris v. Schlumberger Tech. Corp.*, No. 16-cv-0012, 2016 WL 4197572, at *2

21   (D. Alaska Aug. 9, 2016) (granting defendant's motion for a more definite statement where

22   plaintiff did not provide sufficient detail to allow defendants to evaluate the complaint, and stating

23   that a more definitive statement would be "beneficial to the Court and all parties").   Courts

24   regularly grant Rule 12(e) motions as an alternative to motions to dismiss for failure to state a

25   claim under Fed. R. Civ. P. 12(b)(6). *See, e.g.*, *Farris*, 2016 WL 4197572, at *2; *Brodie v. Jackson*,

26   No. 11-cv-1769, 2012 WL 13168397, at *2 (D.D.C. July 24, 2012) (granting defendant's motion

27   for a more definite statement where defendant had moved under Rule 12(b)(6) and Rule 12(e)

28   because defendant had "not yet had an opportunity to file a responsive pleading due to the lack of

clarity in [plaintiff's] complaint").  In particular, a more definite statement is appropriate where, as here, the defendant requires specific details in order to prepare and support potentially dispositive defenses.  *See Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010) ("The preferable procedure when a specific date could support a dispositive defense motion is to require the plaintiff to provide a more definite statement under Fed. R. Civ. P. 12(e).").

Epidemic's failure to allege fundamental facts necessary to apprise Meta of its claims and entitlement to relief makes it unreasonable for Meta to attempt to respond.  In particular, Epidemic's Complaint lacks any sort of "clear, concise description of [its] allegations," omitting any identification of when the alleged acts of infringement commenced, examples of the specific infringing content at issue and their location on Meta's applications, or the manner in which Epidemic claims each of its works was infringed. *Brodie*, 2012 WL 13168397, at *2 (stating that plaintiff's complaint must "state the **precise** actions (or inaction) by [d]efendant" that constitute the wrongdoing); *see also supra* IV.A.

To highlight the defect here, the practical result of Epidemic's pleading deficiencies is that Meta is not able to investigate or even attempt to address the problem Epidemic complains about. Epidemic's Complaint merely repeats vague claims of Meta's "rampant infringement," Compl. ¶¶ 46, 47, 49, 56, and asserts that it became aware of such infringement through a "preliminary analysis," without any explanation of what such analysis entailed, Compl. ¶ 25.  Such vague assertions and glaring omissions keep Meta in the dark and make it unreasonable and impractical (not to mention unfair) to require Meta to frame a responsive pleading.  As the Eleventh Circuit has so aptly put it:  "Why should parties wait until discovery to identify, with precision, the subject of the litigation?  That is exactly backward.  Civil pleadings are supposed to mark the boundaries for discovery; discovery is not supposed to substitute for definite pleading." *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1127 (11th Cir. 2014).  Accordingly, in the alternative to dismissing its Complaint (if necessary), the Court should require Epidemic to provide a more definite statement of the infringement it alleges.

//

//

1

**V.     CONCLUSION**

2          For the foregoing reasons, Meta respectfully requests that the Court grant its motion to

3   dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, require Epidemic to provide a more

4   definite statement under Fed. R. Civ. P. 12(e).

5   Dated:  September 26, 2022                    Respectfully submitted,

6                                                 LATHAM & WATKINS LLP

7                                                 By */s/ Joseph R. Wetzel*
                                                     Joseph R. Wetzel
8                                                    Allison L. Stillman
                                                     Brittany N. Lovejoy
9

10                                                   Attorneys for Defendant
                                                     *Meta Platforms, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28