ILENE S. FARKAS (*admitted pro hac vice*)
ifarkas@pryorcashman.com
M. MONA SIMONIAN (*admitted pro hac vice*)
msimonian@pryorcashman.com
**PRYOR CASHMAN LLP**
7 Times Square
New York, New York 10036
Phone: (212) 421-4100
Fax: (212) 326-0806

ADAM S. CASHMAN (State Bar No. 255063)
acashman@singercashman.com
EVAN BUDAJ (State Bar No. 271213)
ebudaj@singercashman.com
**SINGER CASHMAN LLP**
505 Montgomery Street, Suite 1100
San Francisco, California 94111
Phone: (415) 500-6080
Fax: (415) 500-6080

*Attorneys for Plaintiff*
EPIDEMIC SOUND, AB

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EPIDEMIC SOUND, AB, | Case No. 3:22-cv-04223-JSC |
| Plaintiff, | **PLAINTIFF EPIDEMIC SOUND, AB'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT** |
| v. | |
| META PLATFORMS, INC., f/k/a | |
| FACEBOOK, INC., | |
| Defendant. | *(Declaration of M. Mona Simonian filed concurrently)* |
| | <u>**Hearing:**</u> |
| | **Date:** Dec. 1, 2022 |
| | **Time:** 10:00 a.m. |
| | **Place:** Courtroom 8 |

Pryor Cashman LLP

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.    PRELIMINARY STATEMENT ....................................................................................1

II.   STATEMENT OF FACTS ............................................................................................4

    A.  Allegations of Meta's Infringing Content.........................................................4

    B.  Allegations of Meta's Obstructionist Conduct .................................................7

III.  ARGUMENT .................................................................................................................8

    A.  Epidemic Has Sufficiently Pleaded Its Infringement Claims Against Meta.................8

        1.  The Liberal Pleading Standard...............................................................8

        2.  Plaintiff Has Sufficiently Pled Copyright Infringement Against Meta .................9

    B.  Meta's Motion Is Based On A Nonexistent Heightened Pleading Standard ...............12

    C.  Epidemic Has Sufficiently Pleaded Its Claims For Statutory Damages .....................16

    D.  Meta's Alternative Request for a More Definite Statement Should Be Denied .........18

IV.   CONCLUSION.............................................................................................................20

Pryor Cashman LLP

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
Case No. 3:22-cv-04223-JSC

# TABLE OF AUTHORITIES

**CASES**                                                                         **PAGE(s)**

*A.G. Edwards & Sons, Inc. v. Smith*,
   736 F. Supp. 1030 (D. Ariz. 1989) ...............................................................1, 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................9

*Becton Dickinson & Co, v, Cytek Biosciences, Inc.*,
   No. 18-cv-00933-MMC, 2020 WL 1877707 (N.D. Cal. 2020)..............................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................8

*Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co.*,
   149 F. Supp. 3d 1167 (N.D. Cal. 2015) ..............................................................10

*Boxall v. Sequoia Union High Sch. Dist.*,
   464 F. Supp. 1104 (N.D. Cal. 1979) ...............................................................2, 19

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
   No. 10-cv-03428-LHK, 2011 WL 1044899 (N.D. Cal. Mar. 23, 2011)........10, 12, 16

*Brodie v. Jackson*,
   No. 11-1769(BJR), 2012 WL 13168397 (D.D.C. July 24, 2012)........................20

*Bureerong v. Uvawas*,
   922 F. Supp. 1450 (C.D. Cal. 1996) ...................................................................19

*Casanova v. Ulibarri*,
   595 F. 3d 1120 (10th Cir. 2010) .........................................................................20

*Cellars v. Pacific Coast Packaging, Inc.*
   189 F.R.D. 575 (N.D. Cal. 1999)....................................................................18, 19

*Clifton v. Houghton Mifflin Harcourt Publ'g Co.*,
   152 F. Supp. 3d 1221 (N.D. Cal. 2015) .........................................................14, 16

*Clifton v. Pearson Education, Inc.*,
   No. 5:11-cv-03640-EJD, 2012 WL 1565236 (N.D. Cal. May 2, 2012) ..............16

*Davison v. Santa Barbara High Sch. Dist.*,
   48 F. Supp. 2d 1225 (C.D. Cal. 1998) ...........................................................2, 19

*Elektra Entm't Grp., Inc. v. Barker*,
   551 F. Supp. 2d 234 (S.D.N.Y. 2008)...........................................................12, 17

Pryor Cashman LLP

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
Case No. 3:22-cv-04223-JSC

# **TABLE OF AUTHORITIES**

**CASES**                                                                 **PAGE(s)**

*Facebook v. Power Ventures, Inc.*,
    No. 08-CV-05780 JF, Dkt. No. 30.................................................................1, 16, 19

*Facebook, Inc. v. Power Ventures, Inc.*,
    No. C. 08-5780 JF (RS), 2009 WL 1299698 (N.D. Cal. May 11, 2009)..................10, 12, 15

*Famolare, Inc. v. Edison Bros. Stores, Inc.*,
    525 F. Supp. 940 (E.D. Cal. 1981).....................................................................2, 19

*Famous Birthdays, LLC v. SocialEdge, Inc.*,
    No. CV 21-9562 PA, 2022 WL 1591723 (C.D. Cal. Apr. 15, 2022) ................................9, 16

*Farris v. Schlumberger Tech. Corp.*,
    No. 3:16-cv-0012-RRB, 2016 WL 4197572 (D. Alaska Aug. 9, 2016) ................................20

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997) ..............................................................................9

*Harrell v. Blankenship*,
    No. 15-cv-549-CJC-SP, 2016 WL 5388950 (C.D. Cal. Aug. 25, 2016),
    *report and recommendation adopted* No. 15-cv-549-CJC-SP,
    2016 WL 5349418 (C.D. Cal. Sept. 22, 2016) ............................................................9

*Jacobsen v. Katzer*,
    609 F. Supp. 2d 925 (N.D. Ca. 2009) .................................................................16, 17

*Mahon v. Mainsail, LLC*,
    20-cv-01523-YGR, 2020 WL 4569597 (N.D. Cal. Aug. 7, 2020) ....................................9, 12

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
    922 F.3d 946 (9th Cir. 2019) .........................................................................9, 10

*McGucken v. Chive Media Grp. LLC*,
    CV18-01612-RSWL-KS, 2018 WL 3410095 (C.D. Cal. July 11, 2018) ...............................18

*Niantic, Inc. v. Global++*,
    No. 19-cv-03425-JST, 2020 WL 8620002 (N.D. Cal. Sept. 2, 2020) ..................................17

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ..............................................................................9

*Sagan v. Apple Computer, Inc.*,
    874 F. Supp. 1072 (C.D. Cal. 1994) .......................................................................19

*San Bernardino Pub. Employees Ass'n v. Stout*,
    946 F. Supp. 790 (C.D. Cal.1996) .....................................................................1, 19

Pryor Cashman LLP

# TABLE OF AUTHORITIES

**CASES**                                                                **PAGE(s)**

*Sulit v. Sound Choice Inc.*,
    No. C06-00045 MJJ, 2006 WL 8442163 (N.D. Cal. Nov. 14, 2006) .......................................14

*U.S. Capital Partners, LLC v. AHMSA Int'l., Inc.*
    No. 12-6520 JSC, 2013 WL 594285 (N.D. Cal. Feb. 14, 2013) (Corley, J.)..........................18

*Warren v. John Wiley & Sons, Inc.*,
    952 F. Supp. 2d 610 (S.D.N.Y. 2013)...................................................................................15

*Whiteway v. FedEx Kinko's Office and Print Servs., Inc.*,
    No. C05-2320 SBA, 2005 WL 3095864 (N.D. Cal. Nov. 14, 2005).................................18, 19

*Wright v. Buzzfeed, Inc.*,
    No. 2:18-cv-02187-CAS(AFMx), 2018 WL 2670642 (C.D. Cal. 2018)................................18

*Zahedi v. Miramax, LLC*,
    No. CV20-4512-DMG(Ex), 2021 WL 4497211 (C.D. Cal. Jan. 07, 2021)...........................17


**STATUTES AND RULES**

17 U.S.C. § 106.............................................................................................................................9

Fed. R. Civ. P. 8(a) .............................................................................................................4, 9, 19

Fed. R. Civ. P. 8(a)(2) ....................................................................................................................8

Fed. R. Civ. P. 12(b)(6)...........................................................................................................9, 14

Fed. R. Civ. P. 12(e) ............................................................................................................ *passim*


**TREATISES**

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed.) .......9


**WEBSITES**

https://usisrc.org/about/index.html ................................................................................................5

Pryor Cashman LLP

1    **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

2        Plaintiff Epidemic Sound, AB ("Epidemic" or "Plaintiff") respectfully submits this

3    memorandum of points and authorities in opposition to the motion of Defendant Meta Platforms,

4    Inc. f/k/a Facebook, Inc. ("Meta" or "Defendant") to dismiss Epidemic's Complaint pursuant to

5    Federal Rules of Civil Procedure ("FRCP") 12(b)(6) or, in the alternative, for an order requiring

6    Epidemic to provide a more definite statement pursuant to FRCP 12(e) (the "Motion").

7                    **I.      PRELIMINARY STATEMENT**

8        Meta's Motion is purely dilatory.   A plain reading of the Complaint establishes that

9    Epidemic's infringement claims have been sufficiently pled, including detailed factual allegations

10   which identify: (i) the 952 music tracks at issue; (ii) Epidemic's registration and ownership of the

11   952 music tracks, and the 1800 sound recording and musical composition copyrights embodied

12   therein (the "Epidemic Tracks"); and (iii) how these Epidemic Tracks are being stored, reproduced,

13   distributed and exploited by Meta without authorization through Meta's own curated music library

14   and through the content sharing tools Meta offers to its billions of users.   Meta does not dispute

15   that it needs a license for these types of uses, and that it has entered into licenses with other rights

16   holders in order to avoid the very infringement claims at issue here.   Indeed, Meta does not dispute

17   that Epidemic's allegations, if proven, constitute willful copyright infringement.   That alone

18   mandates denial of Meta's Motion.

19       Meta knows that its Motion is a delay tactic.   Indeed, Meta's pretend "need" for

20   "particulars" is belied by its own words.   To quote Meta: "copyright claims need not be pled with

21   particularity" and "[m]otions for a more definite statement are viewed with disfavor and are rarely

22   granted because of the minimal pleading requirements of the Federal Rules." *Facebook v. Power*

23   *Ventures, Inc.*, No. 08-CV-05780 JF, Dkt. No. 30 (Pl.'s Op. to Defs.' Mot. to Dismiss) at 9.   Meta

24   also has said:

25                Under the liberal pleading standards, "pleadings in the federal courts
             are only required to fairly notify the opposing party of the nature of
26           the claim." *A.G. Edwards & Sons, Inc. v. Smith*, 736 F. Supp. 1030,
             1032 (D. Ariz. 1989).   Consequently, Rule 12(e) motions must be
27           denied unless a complaint is so unintelligible that the defendant
             cannot ascertain the nature of the claim being asserted, meaning the
28           complaint is so vague that the defendant cannot begin to frame a
             response. *See San Bernardino Pub. Employees Ass'n v. Stout*, 946

Pryor Cashman LLP

1  F. Supp. 790, 804 (C.D. Cal.1996); *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981); *Boxall v. Sequoia Union High Sch. Dist.*, 464 F. Supp. 1104, 1114 (N.D. Cal. 1979). Moreover, a Rule 12(e) motion should be denied if the detail sought by the motion is obtainable through discovery. *Davison v. Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d 1225, 1228 (C.D. Cal. 1998).

5  *Id.* at 13-14. These are Meta's own words (supported by ample case law). Indeed, given

6  the many creative (yet legally irrelevant) responses Meta has in its Motion – ranging from blaming

7  its own users for posting infringing content, claiming not to be able to find the Epidemic Tracks at

8  issue in their own music library, blaming third-party distributors for providing music to which they

9  do not have rights, and even blaming Epidemic subscribers for posting music (for which they have

10 a license) on Meta's platforms that Meta then further reproduces *without license* – clearly Meta

11 seems to have no problem understanding the "nature of the claims" Epidemic has brought in order

12 to "frame a response." Indeed, to the extent Meta needs "more detail," there will be ample

13 opportunity to "obtain" that "detail" through discovery into, among other things, (i) Meta's music

14 library, where thousands of Epidemic's music tracks reside, and are saved, curated and offered by

15 Meta to its billions of users, without license, and (ii) Meta's system logs and databases which

16 contain specific information concerning each time these Epidemic Tracks were exploited by Meta.

17 Meta cannot unilaterally heighten the pleading standard to a level of specificity far beyond

18 the notice pleading standard required under the FRCP, one that they embrace when it suits them.

19 Not only is pleading with particularity *not* required for copyright infringement claims (as Meta

20 itself has argued in a previous case), Meta knows that the information it feigns to "need" is either

21 solely in Meta's possession – as Meta controls the data concerning the music included in its own

22 music library, and the data concerning how and when its users are accessing Meta's own content

23 sharing tools – or does not exist, given that its music library and content sharing tools do not

24 display a URL or web address when they are being offered to, or utilized by, Meta's users.[1] But

25 none of this information is required at this pleading stage.

26

27 _____

[1] The irony is that Meta has refused Epidemic's requests for years to give it access to the tools it provides to other licensors that would enable Epidemic to identify each and every unauthorized
28 Epidemic Track saved in Meta's music library, (Cplt. ¶¶ 43-57), and has forced Epidemic to do so manually, song by song – undoubtedly because Meta hopes to get away with the "free" use of

Pryor Cashman LLP

1    And because it cannot deny the allegations, Meta engages in deflection in an effort to

2    distract this Court from its own infringing conduct and delay this case from being heard on the

3    merits.  Among the distractions are Meta's repeated efforts throughout its Motion to pretend this

4    case – which is centered on *Meta's* infringement of Epidemic's copyrighted music – is about an

5    entirely different activity, *i.e.*, user generated content ("UGC") posted to its platforms.  The tactic

6    is transparent – because Meta does not want this Court examining Meta's own conduct, and its

7    own infringement, it seeks to not only blame the widespread copying of Epidemic's copyrighted

8    music on Meta's own non-party users, rather than address the fact – separate and apart from UGC

9    – that Meta itself is systematically storing, reproducing, distributing, and otherwise exploiting

10   Epidemic's music, without a license, through its online music library and content sharing tools that

11   it freely offers to its users.  This is *not* a case about infringing UGC – it is about Meta's own actions

12   and its own infringements.  And while it feigns ignorance, Meta cannot genuinely claim it does

13   not know what music it offers to its users in its own music library; nor can Meta claim it does not

14   know how the content sharing tools it created and offers to its users is allowing unhindered sharing

15   of music, whether that music is licensed or not.

16   Meta's Motion also seeks to distract this Court with discussion of Epidemic's license

17   agreements with its own subscribers – agreements that are wholly irrelevant to Meta's own

18   infringing conduct and if anything, confirms the obvious:  that Epidemic requires a license for use

19   of its copyrighted music.  While Epidemic's subscriber agreements allow Epidemic *subscribers* to

20   upload content that include Epidemic's music *licensed by its subscribers* to social media platforms

21   like Facebook and Instagram, these agreements do not provide *Meta* with the right to *subsequently*

22   save, or further reproduce or distribute Epidemic's music to Meta's users.  Nor do these agreements

23   permit Meta to provide tools to its 2.8 billion daily users to reproduce and synchronize Epidemic's

24   music without a license from Epidemic.[2]  Accordingly, Meta's attempt to distract this Court with

25   _____

26   Epidemic's massive library for as long as possible.  Even this manual, time-consuming survey of
     Meta's infringing music library, which has resulted in the list of the Epidemic Tracks at issue,

27   shows significant, ongoing infringement.

28   [2] Indeed, discovery will show that Epidemic's licenses do not allow the subscribers to sub-
     license or otherwise share Epidemic's music beyond their individual audiovisual posts.  These
     licenses specifically preclude subscribers from posting Epidemic's music on a standalone basis.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
Case No. 3:22-cv-04223-JSC

discussion of Epidemic's "business model" or its subscribers is a red herring; it does not insulate Meta from liability or otherwise render Epidemic's pleading insufficient as a matter of law.

Meta's Motion similarly attempts to have this Court prematurely make determinations regarding the damages available to Epidemic for Meta's willful infringement by imposing a requirement to elect and prove an entitlement to statutory damages at the pleading stage that goes far beyond that required under FRCP 8(a). In fact, Meta's entire Motion and its insistence on detailed evidence in a pleading can be read to suggest that Epidemic has to prove its claims in its initial pleading before any discovery is taken. That, simply put, is not the law.

Epidemic's Complaint provides clear and specific factual allegations regarding the copyrighted works at issue, the registration of those copyrights and Meta's past and ongoing infringement of those copyrights through its own conduct. Meta is on notice as to the nature of the claims against it, as proven by the litany of "defenses" thrown at the proverbial wall in their Motion. There is no deficiency in the pleading, and Meta's Motion to dismiss and for a more definite statement should be denied. Meta is free to "deny" the allegations of what exists in its own music library, and discovery should proceed.

## II.    STATEMENT OF FACTS

### A.    Allegations of Meta's Infringing Content

Epidemic is a global music label, publisher and technology company with a catalog of over 38,000 top quality music tracks in over 160 genres, which it offers for use in video content, television and film productions, podcasts, music streaming platforms and other media pursuant to license agreements. (Cplt. ¶¶ 3, 5.) Epidemic is committed to protecting its intellectual property and ensuring its creators are compensated through a model that remunerates its artists prior to release of a music track and shares revenues with that artist once tracks are available for license. (*Id.* ¶¶ 4-5.)

In its Complaint, Epidemic alleges direct and secondary copyright infringement against Meta arising from its storage, reproduction, performance, and distribution of over 950 Epidemic Tracks – comprising over 1800 copyrighted sound recordings and musical compositions owned by Epidemic – through Meta's online music library and content sharing tools, without a license. (Cplt.

¶¶ 26-27, Corrected Ex. A ("Ex. A") (Dkt. 14).)  Epidemic specifically identifies each of the Epidemic Tracks at issue.  (*Id.* ¶¶ 26-27, Ex. A.)  The Complaint also identifies the unique International Standard Recording Code ("ISRC"),[3] and the federal copyright registration numbers for each of the Epidemic Tracks.  (*Id.* ¶ 27, Ex. A.)

The Complaint then details how the Epidemic Tracks are being infringed by Meta.  The Complaint alleges that Meta has created and curated a "music library" through which it stores, organizes and offers music, including the Epidemic Tracks, to users of its social media platforms, Facebook and Instagram (the "Music Library").  Their billions of users are then free to use the music in the Music Library (including the Epidemic Tracks), including to download, stream, or incorporate into video content, for free, without a license or authorization.  (Cplt. ¶¶ 7, 26-28.)  By including the Epidemic Tracks in its Music Library, and by offering this Music Library to its users, Meta has been, and is currently, actively storing, curating, reproducing, performing, distributing, and otherwise exploiting the Epidemic Tracks for free, on a daily basis, without Epidemic's permission.  (*Id.* ¶¶ 7, 28-29.)

The Complaint also alleges that Meta has acknowledged it needs, and has obtained, licenses with the "major" record labels and publishers in order to engage in these activities with respect to their content.  (Cplt. ¶ 57.)  Indeed, publicly-available information reveals that Meta has paid significant sums for such licenses.  (*Id.*)  However, Meta has refused to acknowledge Epidemic's intellectual property rights or obtain a license for the very same rights.  (*Id.*)

The Complaint also details the content sharing tools – Original Audio and Reels Remix – that Meta offers to its users, which is another, separate way in which the Epidemic Tracks are being infringed by Meta.  The Complaint details how the Original Audio feature encourages and allows users to separate or "rip" music out of one user's video post for synchronized use in their own video posts or allows the user to save such audio in its personal library for future users.  (*Id.* ¶¶ 7, 30-32.)  Meta acknowledges that the unlimited copying, sharing, synchronization and distribution made possible by its Original Audio feature is the intention behind the feature.  (*Id.*

---

[3] An "ISRC" number is a universally recognized identification code for sound recordings, used throughout the music industry.  Each ISRC is unique to a specific recording and cannot represent more than one sound recording.  *See* https://usisrc.org/about/index.html.

Pryor Cashman LLP

¶ 33.) Thus, the Original Audio feature allows Meta to extract, or separate the music from original video content in which it was incorporated, and reproduce it for their billions of users who wish to incorporate it into their own video content, irrespective of whether Meta (or anyone else) has any authority to offer, reproduce, distribute, or otherwise use that music in the first instance. (*Id.* ¶ 34.) As the Complaint alleges, no one, ***not even Epidemic's licensed subscribers***, has the right to allow third parties to distribute or synchronize its music without Epidemic's authorization. (*Id.*)

Similarly, the Complaint details the "Reels Remix" feature that Meta offers to its users. As alleged in the Complaint, Reels Remix is a tool Meta offers to its Instagram users, which allows a user to incorporate another user's "Reel" (*i.e.*, a short multi-clip video, often accompanied by an audio component, such as music selected by the creator of the video) into their own, including any audio that is included in the original Reel, thereby creating a new and original "remix" of the original Reel. (*Id.* ¶¶ 31, 35.) Similar to the Original Audio feature, the Reels Remix feature allows and encourages users to take another user's audiovisual content and incorporate it into their own Reel, irrespective of whether anyone has the authority to synchronize or otherwise use the incorporated music in this manner. (*Id.* ¶ 37.) Thus, Meta is providing and promoting tools which offer Epidemic's music to its world of users, for free, and which enable the rampant, unauthorized copying, distribution and synchronization of Epidemic's Tracks, without license. Epidemic alleges that this feature, like the Original Audio feature, enables, encourages, and contributes to exponential infringement of works, allowing one user's infringement to be replicated in other users' Reels without limitation. (*Id.*)

Both the Original Audio and Reels Remix features go well beyond the original user-generated post, or, UGC. Once UGC is posted, Meta then creates unauthorized copies of the Epidemic Tracks in order to make this music free for subsequent users to incorporate into their content by accessing the Original Audio and Reels Remix features. Specifically, through the Original Audio feature, Epidemic alleges that, upon information and belief, Meta must actually separate the Epidemic Track from the audiovisual content of the original user post so that subsequent users can incorporate the Epidemic Track into their own video content. (*Id.* ¶ 41.) Such "ripping," or copying of the Epidemic Track from a synchronized video constitutes an

unauthorized reproduction of the Epidemic Track by Meta. (*Id.*) Similarly, for the Reels Remix feature, Meta must make a reproduction of the original poster's Reel to display it beside the subsequent user's Reel, thereby creating unauthorized reproductions of the Epidemic Tracks. (*Id.* ¶ 42.) The infringing conduct which results from Reel and Original Audio features is not about "UGC" – it is about the subsequent infringing conduct by Meta after content is uploaded by others.

Epidemic has identified 952 Epidemic Tracks on Meta's platforms, Facebook and Instagram, and asserts claims against Meta for direct willful copyright infringement due to Meta's storage, reproduction, distribution and performance of Epidemic's copyrighted music without authorization through its Music Library and its Original Audio and Reels Remix features. (*Id*. ¶¶ 58-66.) Epidemic further asserts claims against Meta for secondary copyright infringement based on its operation of its Music Library and its content sharing features which encourage users to infringe Epidemic's copyrighted works, including by inducing such infringement, by providing users with the ability and tools to infringe Epidemic's music, and by causing and materially contributing to the infringement of Epidemic's music. (*Id.* ¶¶ 67-77.) There is more than sufficient detail in the Complaint which puts Meta on notice as to the claims against it.

## B. Allegations of Meta's Obstructionist Conduct

Epidemic's Complaint also details Meta's obstruction and delay when faced with Epidemic's claims. Meta seems to boast about its "bespoke" music rights management tool provided to its licensors, which enables music rights holders to identify, monitor and manage use of their content on Meta's platforms (the "Music Rights Manager"). (Mot. at 8.) Meta admits that this "bespoke" Rights Manager Tool will allow Meta to easily identify all of the infringement of the Epidemic Tracks at scale and to resolve any conflicts and otherwise address that infringement. (*Id.* ¶¶ 44, 47.) Yet, Meta concedes that it has refused, and continues to refuse, to allow Epidemic access to this very tool despite repeated requests. Instead, Meta has only given Epidemic access to its right management tool for *video* content – a tool that is wholly inappropriate and ineffective

Pryor Cashman LLP

1   for a music rights holder.[4]  This allows Meta to feign that it "can't find" the Epidemic Tracks.

2   (Cplt. ¶¶ 45-47; Mot. at 8.)

3       Meta's purposeful refusal to provide access to the rights management tool is by design:

4   Meta is interfering with Epidemic's ability to stop each instance of infringement, and its ability to

5   monitor and protect its rights, while enabling Meta to continue and contribute to the rampant

6   infringement of Epidemic's works on Meta's platforms. (*Id.* ¶¶ 45-47.)  Meanwhile, Meta pretends

7   to play ignorant.  Meta's refusal to allow Epidemic to monitor infringement of, and protect, its

8   copyrighted works is consistent with its refusal to address the infringements itself.

9       The Complaint details the many times that Epidemic has notified Meta of the rampant

10  infringement of music owned by Epidemic on Meta's platforms, including through its Music

11  Library and its content sharing features.  The Complaint also details Meta's refusal to address the

12  problem or to provide Epidemic with the tools it provides to other licensors, undoubtedly because

13  Meta wants to "get away" with stealing Epidemic's music, without proper remuneration or license,

14  for as long as possible.  As a result, Epidemic was forced to bring this suit.  Meta's response:  more

15  disingenuous delay.  (Cplt. ¶¶ 48-57.)

16                 **III.**    **ARGUMENT**

17  **A.**    **Epidemic Has Sufficiently Pleaded Its Infringement Claims Against Meta**

18         *1.*    *The Liberal Pleading Standard*

19      A complaint is sufficient if it gives the defendant "fair notice of what the . . . claim is and

20  the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation

21  omitted); FRCP 8(a)(2) (requiring that the complaint contain "a short and plain statement of the

22  claim showing that the pleader is entitled to relief").  "When there are well-pleaded factual

23

24  _____

    [4] Meta attempts to downplay its calculated refusal to provide access to the Music Rights Manager
    by arguing that Epidemic was able to identify unlicensed content on Meta's platforms.  However,
25  Meta ignores the fact that without access to the Music Rights Manager, Epidemic was forced to
    search for infringing content in the Music Library and on Meta's platforms on a song-by-song
26  basis – a task that cannot be completed at scale given the tens of thousands of new instances of
    theft of Epidemic's works per day. (Cplt. ¶ 8.)  Epidemic submits that discovery will provide
27  visibility into infringement of its copyrighted music beyond the 952 Tracks already identified.
    The Complaint also alleges (and Meta ignores) that the rights management tool for *video* content
28  is woefully technologically insufficient to monitor or protect Epidemic's music on Meta's
    platforms at scale, as it does not allow Epidemic to use appropriate audio-only reference files in
    identifying infringing material on Meta's platforms. (*Id.* ¶ 45.)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
Case No. 3:22-cv-04223-JSC

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Twombly*, 550 U.S. at 555 (a court must proceed, "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"). Tellingly, Meta does not dispute, anywhere in its Motion, that the factual allegations in the Complaint, when taken as true, establish a claim for direct or secondary copyright infringement.

Rather, its Motion focuses on the purported need for additional specific allegations. But at the pleading stage, "a complaint's factual allegations need not be detailed." *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019) (citation omitted).

"A court may not dismiss a complaint under Rule 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.'" *Harrell v. Blankenship*, No. 15-cv-549-CJC-SP, 2016 WL 5388950, at *2 (C.D. Cal. Aug. 25, 2016), *report and recommendation adopted* No. 15-cv-549-CJC-SP, 2016 WL 5349418 (C.D. Cal. Sept. 22, 2016); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Further, FRCP 12(b)(6) must be read in conjunction with FRCP 8(a), which "contains 'a powerful presumption against rejecting pleadings for failure to state a claim.'" *Gilligan*, 108 F.3d at 249; 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §1356 (3d ed.). Indeed, the "Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6)." *Famous Birthdays, LLC v. SocialEdge, Inc.*, No. CV 21-9562 PA (MRWx), 2022 WL 1591723, at *2 (C.D. Cal. Apr. 15, 2022) (citing *Gilligan*, 108 F. 3d at 248-49).

### 2. *Plaintiff Has Sufficiently Pled Copyright Infringement Against Meta*

To state a claim for copyright infringement, a plaintiff only need plausibly allege (1) that it owns a valid copyright in the work at issue, and (2) that the defendant has violated at least one of the exclusive rights granted to copyright holders.[5] *Mahon v. Mainsail, LLC,* 20-cv-01523-YGR, 2020 WL 4569597, at *6 (N.D. Cal. Aug. 7, 2020) (citing *Perfect 10, Inc. v. Giganews, Inc.,* 847

---

[5] "Rights granted to copyright holders include (1) the right to reproduce the work, (2) the right to prepare derivative works, (3) the right to distribute copies, (4) the right to perform the work publicly, and (5) the right to display the work publicly." *Mahon,* 2020 WL 4569597, at *6 (citing 17 U.S.C. § 106).

Pryor Cashman LLP

F.3d 657, 666 (9th Cir. 2017)); *see also Malibu Textiles,* 922 F. 3d at 951; *Facebook, Inc. v. Power Ventures, Inc.*, No. C. 08-5780 JF (RS), 2009 WL 1299698, at *3 (N.D. Cal. May 11, 2009). Despite its lengthy Motion, Meta does not – because it cannot – dispute that the Complaint sufficiently alleges these two elements.

The Complaint expressly identifies 952 Epidemic Tracks that Meta has infringed through its Music Library or its content sharing tools (Cplt. ¶¶ 26-27, Ex. A.) For each such track, the Complaint, in Exhibit A, identifies the song title, artist, the unique ISRC number for each track, and the federal copyright registration numbers for the sound recordings and musical works at issue. (*Id.*) These registrations show that Epidemic "is the copyright owner of both the sound recordings and underlying musical compositions embodied in the Tracks at issue" in this case. (Cplt. ¶ 27, Ex. A.) The Complaint has indisputably identified the works at issue and alleged ownership of valid copyrights in the Epidemic Tracks, and thus, has satisfied the first element of a claim for copyright infringement.[6] *See Malibu Textiles,* 922 F.3d at 951-52 (affirming denial of motion to dismiss and holding that plaintiff satisfied the first element of copyright infringement claim where it alleged it owned the copyrights to the works at issue and identified registration numbers for those copyrights); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-cv-03428-LHK, 2011 WL 1044899, at *7 (N.D. Cal. Mar. 23, 2011) (complaint satisfied first element of copyright infringement claim where it identified the copyrightable works at issue and alleged that copyright registration for work had issued).

---

[6] Meta cites only *one case* from this District in support of its claim that Epidemic's Complaint must identify specific infringing copies to sufficiently state a claim, and all of its cases are factually distinguishable. Meta cites to *Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175-76 (N.D. Cal. 2015), but the issue in *Blizzard* was not whether the plaintiffs had sufficiently alleged ownership of the copyrighted video games at issue (they had). Nor was the issue in *Blizzard* whether the video games as a whole were infringed (which is the issue with the Epidemic Tracks). Rather, the issue was whether defendant had copied certain characters or design features within those video games, and whether those components were *protectible* or not. Because plaintiffs had failed to identify the specific *protectible* elements (the characters and designs) within the video games that were purportedly copied by the defendant in its own video game, the Court held that plaintiffs had not met their burden. 149 F. Supp. 3d at 1175-76. This case is inapposite as the "protectability" of Epidemic's Tracks is not at issue. The other cases Meta cites similarly concern a failure to identify the specific works infringed or in which form copies were made. Epidemic has specified the works at issue in this case and provided detailed allegations of the means through which Meta has reproduced the Epidemic Tracks.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
Case No. 3:22-cv-04223-JSC

1   The Complaint also sufficiently pleads that Meta has violated at least one of Epidemic's

2   exclusive rights as a copyright holder.  The Complaint sets forth detailed allegations – many of

3   which Meta concedes in its Motion – that Meta has created and curated a Music Library that Meta

4   offers to all of its users for downloading, streaming, and use of such music in video content and

5   posts, and that in making the Music Library available to users, Meta reproduces, performs,

6   distributes, and otherwise exploits the tracks contained in the Music Library to users.  (Cplt. ¶¶ 26-

7   28.)  The Complaint further specifically alleges that the Epidemic Tracks at issue, identified on

8   Exhibit A, have been, and/or as of the date of the filing of the Complaint, are currently stored in

9   the Music Library by Meta and are being made available to its users – without a license.  The

10  Complaint also provides details as to how the Epidemic Tracks are infringed through the use of

11  that Music Library.  (Cplt. ¶¶ 27-29, 60-61.)

12      Tellingly, Meta's Motion does not dispute, but rather concedes, that it requires a license

13  to store, reproduce, perform or distribute music owned by others – including Epidemic – in its

14  Music Library.  (Mot. at 5, 7.)  Meta further concedes that it has obtained and paid for such

15  licenses from copyright owners such as major record labels, music publishers and music

16  distributors, but has not obtained a license from Epidemic.  (*Id.*)  Nor does Meta dispute that if

17  Epidemic's music is being saved in its Music Library, it requires a license to legally do so.

18      The Complaint also alleges, in detail, that Meta has created content sharing tools such as

19  the Original Audio feature and the Reels Remix features, in order to compete with TikTok and

20  others.  The Complaint alleges that Meta is improperly exploiting the Epidemic Tracks through

21  Original Audio and Reels Remix, and provides details as to how Meta is directly infringing

22  Epidemic's right of reproduction and distribution, and is inducing its users to infringe the

23  Epidemic Tracks and is contributing to that infringement, to its own financial benefit.  (Cplt

24  ¶¶ 29-42, 62, 69, 75-76.)  Epidemic alleges that Meta's content sharing tools allow its users to

25  "rip," or copy (without authorization) Epidemic's music from another user's post, and, in doing

26  so, create unauthorized copies of Epidemic's Tracks that proliferate throughout Meta's

27  platforms.  (Cplt. ¶¶ 32-34.)  Meta concedes that the Original Audio feature is only available to

28  Instagram users in situations where the music has *not* matched to licensed music – thus,

conceding that Meta's tools are aimed at reproducing and distributing music for which Meta has

no license.  (Mot. at 4.)

The Complaint sufficiently alleges the nature of the claim, the nature of the infringement, and Meta's culpability for infringing Epidemic's rights.  *See Brocade*, 10-cv-03428-LHK, 2011 WL 1044899, at *7-8 (plaintiff alleged a plausible claim of copyright infringement and sufficiently plead the second element of claim where it alleged that defendant used and copied the work at issue in making its product and retained a copy of plaintiff's work at issue); *Mahon*, 2020 WL 4569597, at *6 (allegation that defendant requested a copy of and continued to display plaintiff's film without authorization was sufficient to create a plausible inference that defendant distributed the film without authorization and thus, sufficiently stated a claim for copyright infringement); *see also Elektra Entm't Grp., Inc. v. Barker*, 551 F. Supp. 2d 234, 238-39 (S.D.N.Y. 2008) ("[T]he [c]omplaint adequately alleges that [d]efendant has in the past used, and as of the filing of the [c]omplaint . . . has continued to use, an online media distribution system to download, distribute, and/or make available, copyright works belonging to [p]laintiffs.")[7]

**B.  Meta's Motion Is Based On A Nonexistent Heightened Pleading Standard**

Tellingly, Meta does not dispute that it saves, curates and offers music in its Music Library so that users can synchronize copies of that music in video content.  Meta also does not dispute that it needs a license from the rightsholder of the music to make it available in the Music

---

[7] Meta's Motion does not challenge the sufficiency of the pleading of the secondary infringement claims asserted in the Complaint (Second and Third Causes of Action, Cplt. ¶¶ 67-80).  For the avoidance of doubt, Epidemic has sufficiently stated those claims as well.  With respect to its claim for inducement of copyright infringement (Epidemic's Second Cause of Action), Epidemic specifically alleges by operating and maintaining its Music Library and the Original Audio and Reels Remix tools that encourage users to infringe Epidemic's copyrighted works, Meta has induced its users to infringe the Epidemic Tracks through, among other things, the promotion, ease and accessibility of these features allowing users to reproduce and disseminate Epidemic's works without a license through a single click.  (Cplt. ¶¶ 67-70.)  Meta's inducement of copyright infringement is also evidenced by Meta's business model which is dependent on these features to keep up with other video content platforms at the expense of copyright owners.  (*Id.* ¶ 69.)  Similarly, for its contributory infringement claim (Epidemic's Third Cause of Action), the Complaint alleges that Meta has actual and constructive knowledge of the infringing activities on its platforms, and through the creation of the Music Library and content sharing tools, Meta is knowingly causing and materially contributing to unlawful reproduction, distribution and performance of Epidemic's Tracks.  (Cplt. ¶¶ 48-57, 75-77.)  These allegations are sufficient to state these secondary infringement claims as a matter of law.  *See Facebook, Inc. v. Power Ventures, Inc.*, No. C. 08-5780 JF (RS), 2009 WL 1299698, at *4 (N.D. Cal. May 11, 2009); *Mahon*, 2020 WL 4569597, at *6.

Pryor Cashman LLP

Pryor Cashman LLP

1  Library. Meta also does not dispute that it does not have such a license from Epidemic. (Mot. at

2  4-5.) Indeed, Meta does not even dispute that Epidemic has identified 952 Epidemic Tracks or

3  that Epidemic's music is in its Music Library.

4      Nor does Meta dispute – in fact, it concedes – that for any music for which Meta does not

5  have a license – including Epidemic's music – its content sharing tools, Original Audio and

6  Reels Remix, permit users to copy copyrighted music from another user's video post for use in

7  their own video content. (Mot. at 4.) Meta appears to concede that it requires a license from the

8  copyright owner for such additional, unauthorized synchronized usages.

9      Because Meta cannot dispute these facts, its Motion, instead, seeks to impose a

10 nonexistent pleading burden on Epidemic. Much of Meta's Motion is devoted to its argument

11 that Epidemic is required to provide specific examples of infringement by its users through

12 identification of specific URLs or web addresses of user posts or other UGC. Meta argues that it

13 cannot identify where on its "massive platforms where billions of users upload UGC every single

14 day" the infringements exist. (Mot. at 11.) This approach is at best a distraction, and at worst, a

15 purposeful mischaracterization of the nature of the infringement at issue.

16     A plain reading of the Complaint makes quite clear that the infringement complained of

17 here does not center on infringing UGC that a user independently uploads to Meta's platforms,

18 but rather, the infringement by Meta *itself*, because Meta *itself* is curating, storing, reproducing,

19 performing and distributing Epidemic's music *to* its users without a license through its Music

20 Library and through its Original Audio and Reels Remix features. (Cplt. ¶ 9.) It cannot be

21 disputed that Meta knows and has full access to the works it stores in its own Music Library or

22 that Meta has full access to and knowledge of the reproductions it makes and distributes to users

23 through its content sharing tools. While Meta has denied Epidemic access to the Music Rights

24 Manager – despite repeated requests – so that Epidemic's investigation of Meta's infringement

25 can be comprehensive – Meta has been able to manually discover infringements of the Epidemic

26 Tracks, with the expenditure of considerable manpower.[8]

27

28 ─────────────────────────
[8] Meta argues that, thus far, it could only find two examples of infringement in its Music Library
out of 100 tracks previously identified by Epidemic. Meta is free to deny Epidemic's claims,

The following screenshots are a few examples of the results of Epidemic's manual efforts, which not only show examples of the infringement at Meta's hands, but also show, as Meta knows full well, there would be no way to specify "URLs" or "web addresses" for Epidemic's works appearing in the Music Library because *Meta does not provide a URL or web address* that is visible to users of the platform when accessing the Music Library:[9]

   

Yet this is all a needless distraction on this Rule 12(b)(6) motion. It has long been held that a copyright infringement claim **need not be pled with particularity**. *Sulit v. Sound Choice Inc.*, No. C06-00045 MJJ, 2006 WL 8442163, at *10 (N.D. Cal. Nov. 14, 2006) ("No heightened pleading standard applies to complaints for copyright infringement. . . . Copyright claims need not be pled with particularity." (internal citations omitted & citation omitted)); *Clifton v.*

---

although this is well beyond the four corners of the Complaint and this motion. This argument is yet another example of Meta understanding full well what Epidemic is claiming here. It is also a concession that Meta's Music Library includes Epidemic's music without a license. Epidemic will be able to prove infringement of all of the Tracks identified in the Complaint, and is confident that discovery will reveal scores more.

[9] From left to right: (i) screenshot of initial user "Reel" screen; (ii) screenshot of screen after user hits "Audio" icon on left side of Reel screen to access the Music Library; (iii) screen shot of user searching for an Epidemic Track; and (iv) screenshot of the Epidemic Track being added to the Reel. Based on these screenshots, it is apparent that there would be no way for Epidemic to provide "URLs" or web addresses for the Epidemic Tracks stored by Meta in the Music Library, as no such URLs or web addresses are available to the user when accessing the Music Library. (Declaration of M. Mona Simonian in support of Plaintiff's Opp. to Motion ¶¶3-4, Ex. 1).

Pryor Cashman LLP

Pryor Cashman LLP

1  *Houghton Mifflin Harcourt Publ'g Co.*, 152 F. Supp. 3d 1221, 1225 (N.D. Cal. 2015) (plaintiff

2  did not have burden of pleading particularized facts at the pleading stage); *Warren v. John Wiley*

3  *& Sons, Inc.*, 952 F. Supp. 2d 610, 617-18 (S.D.N.Y. 2013) (holding that courts are "strictly

4  proscribed" from subjecting "copyright plaintiffs to a heightened level of pleading" and a

5  complaint need not specify how each work at issue has been infringed at the pleading stage)

6  (citation omitted).  To require the level of specificity requested by Meta in its Motion would be

7  tantamount to requiring Epidemic to *prove* its claims at the pleading stage.  Indeed, Meta is well

8  aware that the law does not require the level of specificity it seeks at the pleading stage, because

9  it has argued precisely that, and prevailed, before another court in this district.  *See Facebook,*

10  *Inc. v. Power Ventures, Inc.*, No. C. 08-5780 JF (RS), 2009 WL 1299698, at *3-4 (N.D. Cal.

11  May 11, 2009) (holding that Facebook need not have included particularized allegations to

12  support its infringement claim because "[t]here is no requirement that copyright claims must be

13  pled with particularity.").  Meta knows perfectly well that its motion here is baseless and

14  disingenuous.

15      Meta's feigned demands for the precise location of each infringing copy is not only an

16  unwarranted and improper amount of specificity at this stage, but is particularly inappropriate

17  given that the information that Meta demands is solely within Meta's possession.  First, Meta

18  refuses to provide access to the very Rights Manager for Music tool that would assist Epidemic

19  in identifying the precise location of all of the infringements on Meta's platform.  (Cplt. ¶¶ 45-

20  47.)  Meta admits that it provides this tool to other music rights holders "for the purposes of

21  identifying and monitoring the use of content in which [a rights holder] own[s] and/or control[s]

22  exclusive rights."  (Cplt. ¶¶ 44-47.)  Then, after refusing access (because undoubtedly it would

23  reveal the scope of the rampant infringement on Meta's platform), Meta attempts to fault

24  Epidemic for not proving every separate infringement of every Epidemic Track listed on Exhibit

25  A to the Complaint – the very specific information that Epidemic has repeatedly asked for, that

26  Meta has steadfastly refused to provide and which information will prove infringement of the

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
Case No. 3:22-cv-04223-JSC

Tracks (and, in all likelihood, thousands more). But while Epidemic is confident that it can and will prove the alleged infringement, it is not required to prove its claims at this pleading stage.[10]

Indeed, this Court has repeatedly recognized that where certain facts are within the knowledge of the defendant alone, a plaintiff need not allege them at the pleading stage. *Brocade*, 2011 WL 1044899, at *8 (plaintiff sufficiently stated infringement claim where more particularized facts concerning infringement required examination of information solely within defendant's possession); *Clifton v. Houghton Mifflin Harcourt*, 152 F. Supp. 3d at 1225 (plaintiff's allegations of infringement were sufficient where additional facts were peculiarly within the possession and control of defendant.); *Clifton v. Pearson Education, Inc.*, No. 5:11-cv-03640-EJD, 2012 WL 1565236, at *5 (N.D. Cal. May 2, 2012) (plaintiff had alleged sufficient facts to make its claim plausible, and only source of additional information was in defendant's possession and control.) Indeed, Meta itself has argued this very point. *Facebook v. Power Ventures, Inc.*, No. 08-CV-05780 JF, Dkt. No. 30 at 14.

### C. Epidemic Has Sufficiently Pleaded Its Claims For Statutory Damages

Epidemic has also sufficiently met the pleading standard to state a plausible claim for statutory damages as a matter of law. First, statutory damages is a remedy, not a claim. Thus, unless the four corners of the Complaint explicitly preclude a plausible entitlement to statutory damages – which is not the case here – Meta's arguments on this motion are premature. *See Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 935 (N.D. Ca. 2009) (dismissal of statutory damages claim was premature where discovery could reveal post-registration infringement); *Famous Birthdays,* 2022 WL 1591723, at *7 (entitlement to statutory damages arising from copyright infringement was a fact issue which could not be decided by the court at the pleading stage, and thus, complaint had stated a plausible entitlement to statutory damages). In any event, the Complaint adequately alleges that Meta has in the past, and has continued to use the Epidemic

---

[10] Discovery will provide a complete examination of Meta's databases to determine all of the Epidemic Tracks that were added to the Music Library (including those tracks that have been "re-named" by Meta and others to conceal infringement) and when, which users accessed them from the Music Library, on what different products were they used without permission, and when they were performed for or distributed to users. Similarly, discovery of Meta's system logs will establish all of the various Epidemic Tracks that were accessed by users through the content sharing features Original Audio and Reels Remix.

1    Tracks without a license, and "an allegation of past and continuing infringement 'sufficiently

2    puts defendant on notice as to which acts - …[*i.e.,*] distribution of certain copyrighted recordings

3    via online media – form the basis of the Plaintiff's claim.'" *Elektra,* 551 F. Supp. 2d at 239.

4            There is no requirement that Epidemic plead each and every precise date of each

5    infringement to determine whether or not that particular infringement commenced before the

6    effective date of registration.[11]  Moreover, the precise dates of each time that Meta infringed

7    Epidemic's copyrights – such as the dates of when Meta added the Epidemic Tracks to the Music

8    Library or each time it distributed them to users – is particularly within the knowledge of Meta

9    alone.[12]  Indeed, there may be separate, additional infringements of each of the Epidemic Tracks

10   in new videos that have occurred since Epidemic's last investigation.  And given the information

11   that is within Meta's knowledge – such as the complete dates on which Meta first infringed each

12   of the Epidemic Tracks (*e.g.,* when it first added each particular Epidemic Track to the Music

13   Library, or each time it extracted an Epidemic Track from a user post for use by another user)

14   without discovery in Meta's system data, dismissal of the statutory damages claim would be

15   premature.  *See Niantic, Inc. v. Global++,* No. 19-cv-03425-JST, 2020 WL 8620002, at *5

16   (N.D. Cal. Sept. 2, 2020) (dismissal of statutory damages claim was not appropriate before

17   parties engaged in discovery on infringement claim and could develop the record as to dates of

18   infringement); *Jacobsen*, 609 F. Supp. 2d at 935 ) (refusing to dismiss claim for statutory

19

20

21

22   [11] While Meta attempts to conflate the November 2017 date cited in the Complaint as the date
     infringement commenced, a plain reading of the Complaint reveals that November 2017 was the
23   earliest date Meta was made aware that Epidemic's music was being infringed generally; it was
     not the date of the infringement of each and every one of the particular Epidemic Tracks at issue
24   which are continuing to be infringed to this day.

25   [12] Meta also claims that Epidemic has not plead facts concerning the dates on which each of the
     works at issue were registered.  Epidemic included a list of copyright registration numbers for all
26   of the works at issue, and the dates of registration are publicly available based on those
     registrations and are thus, incorporated by reference in the Complaint.  *See Zahedi v. Miramax,*
     *LLC,* No. CV20-4512-DMG(Ex), 2021 WL 4497211, at *4 (C.D. Cal. Jan. 07, 2021)(where the
27   complaint included copyright registration numbers for the works at issue, the date of registration
     was incorporated by reference in the complaint, and could not serve as a basis to strike the
28   request for statutory damages.)  Indeed, Meta attached each and every one of the registrations to
     its motion papers.

Pryor Cashman LLP

1 damages at the pleading stage where discovery could reveal instances of post-registration

2 infringement).[13]

3     **D.**    **Meta's Alternative Request for a More Definite Statement Should Be Denied**

4     Meta's Motion alternatively seeks a more definite statement pursuant to Fed. R. Civ. P.

5 12(e) to require Epidemic to essentially prove its infringement claims in the Complaint.

6 However, "Rule 12(e) motions are viewed with disfavor and are rarely granted. The inability to

7 ascertain all of the facts from a complaint is not an adequate ground for a more definite

8 statement, as these concerns can be addressed through discovery." *Whiteway v. FedEx Kinko's*

9 *Office and Print Servs., Inc.*, No. C05-2320 SBA, 2005 WL 3095864, at *1 (N.D. Cal. Nov. 14,

10 2005); *U.S. Capital Partners, LLC v. AHMSA Int'l., Inc.* No. 12-6520 JSC, 2013 WL 594285, at

11 *2 (N.D. Cal. Feb. 14, 2013) (Corley, J.). "The proper test in evaluating a motion under Rule

12 12(e) is whether the complaint provides defendant with a sufficient basis to frame his responsive

13 pleading. . . . Generally, the Court will require a more definite statement only when the pleading

14 is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in

15 good faith or without prejudice to himself." *Cellars v. Pacific Coast Packaging, Inc.* 189 F.R.D.

16 575, 578 (N.D. Cal. 1999) (internal citations and quotations omitted).

17     Here, the Complaint provides detailed allegations regarding Meta's infringement of the

18 Epidemic Tracks by inclusion in Meta's own Music Library, as well as its content sharing tools.

19 Epidemic has identified the specific works at issue, (Cplt. Ex. A), the copyright registrations for

20 those works, (*id.*), and the methods by which those works have been and continue to be infringed

21 by Meta. (Cplt. ¶¶ 22-42, 58-80.) These allegations provide Meta with a sufficient notice of the

22 basis of Plaintiff's claims, and any suggestion that Meta cannot ascertain the nature of the claims

23

24 [13] The cases upon which Meta relies are inapposite. First, in *McGucken v. Chive Media Grp.
LLC*, CV18-01612-RSWL-KS, 2018 WL 3410095, at *5 (C.D. Cal. July 11, 2018), the court

25 found that plaintiff had failed to allege the dates of registration of copyrights and that the dates of
infringement of the works at issue were not solely in the control of the defendant, and thus
plaintiff had failed to plead entitlement to statutory damages. Neither is the case here. Other

26 cases on which Meta relies, such as *Becton Dickinson & Co, v, Cytek Biosciences, Inc.*, No. 18-
cv-00933-MMC, 2020 WL 1877707, at *7 (N.D. Cal. 2020) and *Wright v. Buzzfeed, Inc.*, No.

27 2:18-cv-02187-CAS(AFMx), 2018 WL 2670642, at *3 (C.D. Cal. 2018) dismissed statutory
damages claims where the plaintiff explicitly alleged that the infringement complained of took

28 place years before the copyright was registered, and thus, there was no plausible entitlement to
statutory damages. Those cases are also inapposite.

asserted is demonstrably false. *See Whiteway*, 2005 WL 3095864, *2 (denying motion for more definite statement where complaint provided defendant and the court "with a fair idea of the basis of the complaint and the legal grounds claimed for recovery."); *see also Cellars*, 189 F.R.D. at 578-80 (denying motion for more definite statement where plaintiff's complaint included allegations setting forth each element of asserted claims).

Indeed, it appears that Meta has more than it needs to "frame a responsive pleading." Meta's detailed Motion, with its host of excuses for its infringing conduct (blaming "UGC," admitting it refused to give Epidemic access to the very tool it prides itself on "for the purposes of identifying and monitoring the use of content in which [a rights holder] own[s] and/or control[s] exclusive rights,"[14] blaming other distributors for putting the Epidemic Tracks in the Music Library) indicates that Meta understands perfectly well what Epidemic is claiming here.

But nothing may be more telling that Meta's own words in a prior case in this District:

> "Motions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996) (citing *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994)). A Rule 12(e) motion for a more definite statement must be considered in light of the liberal pleading standards of Rule 8(a) in federal court. *Id.* Under the liberal pleading standards, "pleadings in the federal courts are only required to fairly notify the opposing party of the nature of the claim." *A.G. Edwards & Sons, Inc. v. Smith*, 736 F. Supp. 1030, 1032 (D. Ariz. 1989). Consequently, Rule 12(e) motions must be denied unless a complaint is so unintelligible that the defendant cannot ascertain the nature of the claim being asserted, meaning the complaint is so vague that the defendant cannot begin to frame a response. *See San Bernardino Pub. Employees Ass'n v. Stout*, 946 F. Supp. 790, 804 (C.D. Cal. 1996); *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981); *Boxall v. Sequoia Union High Sch. Dist.*, 464 F. Supp. 1104, 1114 (N.D. Cal. 1979). Moreover, a Rule 12(e) motion should be denied if the detail sought by the motion is obtainable through discovery. *Davison v. Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d 1225, 1228 (C.D. Cal. 1998).

*Facebook v. Power Ventures, Inc.*, No. 08-CV-05780 JF, Dkt. No. 30 (Pl.'s Op. to Defs.' Mot. to Dismiss) at 13-14. Meta specifically argued in that case that its notice pleading was sufficient,

Pryor Cashman LLP

---

[14] (Cplt. ¶ 44).

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

and that further details were either in the defendant's possession or are obtainable in discovery and thus, the motion for a more definite statement should be denied. The same is true here.[15]

## IV. CONCLUSION

For the foregoing reasons, Epidemic respectfully requests that the Court deny the Meta's motion to dismiss or in the alternative, for a more definite statement, and grant Epidemic such other and further relief as may be just and proper.

Dated: November 1, 2022                    PRYOR CASHMAN LLP

                                           By: *s/ Ilene S. Farkas*

                                           Ilene Farkas (*pro hac vice*)
                                           ifarkas@pryorcashman
                                           M. Mona Simonian  (*pro hac vice*)
                                           msimonian@pryorcashman.com
                                           7 Times Square
                                           New York, NY 10036
                                           Telephone:  +1.212.421.4100

                                           *Attorneys for Plaintiff Epidemic Sound, AB*

Dated: November 1, 2022                    SINGER CASHMAN LLP

                                           By: *s/Adam S. Cashman*

                                           Adam S. Cashman (Bar No. 255063)
                                           acashman@singercashman.com
                                           Evan Budaj (Bar No. 271213)
                                           ebudaj@singercashman.com

---

[15] Consistent with its prior position, Meta has not cited a single case from this Court or this District on this point – much less one requiring more definiteness in a copyright infringement case. Instead, they cite to cases from other courts that are entirely distinguishable. For example, Meta cites to *Farris v. Schlumberger Tech. Corp.*, No. 3:16-cv-0012-RRB, 2016 WL 4197572, at *2 (D. Alaska Aug. 9, 2016), a class action litigation. There, the court granted leave to amend to provide a more definite statement identifying the potential class because, while the individual plaintiff had sufficiently stated claims on its own behalf, the pleading contained no details regarding the "others similarly situated" sufficient to allow defendants identify the potential class. *Id.* Here, there is no question as to the identity of the claimant. *Brodie v. Jackson,* No. 11-1769(BJR), 2012 WL 13168397 at *2 (D.D.C. July 24, 2012) was a *pro se* claim for legal malpractice where the court held that defendant should not be expected to "parse through the 153 pages of exhibits attached to the complaint in an attempt to decipher what the claims against him are in this matter." *Id.* In *Casanova v. Ulibarri*, 595 F. 3d 1120, 1125 (10th Cir. 2010), the Tenth Circuit reversed the dismissal of a *pro se* plaintiff's complaint, even though the plaintiff did not include the date on which the alleged prison warden's wrongful conduct occurred, where the complaint alleged sufficient detail about the event to identify it. *Id.* None of these cases are remotely relevant.

and that further details were either in the defendant's possession or are obtainable in discovery and thus, the motion for a more definite statement should be denied. The same is true here.[15]

## IV. CONCLUSION

For the foregoing reasons, Epidemic respectfully requests that the Court deny the Meta's motion to dismiss or in the alternative, for a more definite statement, and grant Epidemic such other and further relief as may be just and proper.

Dated: November 1, 2022                    PRYOR CASHMAN LLP

                                           By: *s/ Ilene S. Farkas*

                                           Ilene Farkas (*pro hac vice*)
                                           ifarkas@pryorcashman
                                           M. Mona Simonian  (*pro hac vice*)
                                           msimonian@pryorcashman.com
                                           7 Times Square
                                           New York, NY 10036
                                           Telephone:  +1.212.421.4100

                                           *Attorneys for Plaintiff Epidemic Sound, AB*

Dated: November 1, 2022                    SINGER CASHMAN LLP

                                           By: *s/Adam S. Cashman*

                                           Adam S. Cashman (Bar No. 255063)
                                           acashman@singercashman.com
                                           Evan Budaj (Bar No. 271213)
                                           ebudaj@singercashman.com

---

[15] Consistent with its prior position, Meta has not cited a single case from this Court or this District on this point – much less one requiring more definiteness in a copyright infringement case. Instead, they cite to cases from other courts that are entirely distinguishable. For example, Meta cites to *Farris v. Schlumberger Tech. Corp.*, No. 3:16-cv-0012-RRB, 2016 WL 4197572, at *2 (D. Alaska Aug. 9, 2016), a class action litigation. There, the court granted leave to amend to provide a more definite statement identifying the potential class because, while the individual plaintiff had sufficiently stated claims on its own behalf, the pleading contained no details regarding the "others similarly situated" sufficient to allow defendants identify the potential class. *Id.* Here, there is no question as to the identity of the claimant. *Brodie v. Jackson,* No. 11-1769(BJR), 2012 WL 13168397 at *2 (D.D.C. July 24, 2012) was a *pro se* claim for legal malpractice where the court held that defendant should not be expected to "parse through the 153 pages of exhibits attached to the complaint in an attempt to decipher what the claims against him are in this matter." *Id.* In *Casanova v. Ulibarri*, 595 F. 3d 1120, 1125 (10th Cir. 2010), the Tenth Circuit reversed the dismissal of a *pro se* plaintiff's complaint, even though the plaintiff did not include the date on which the alleged prison warden's wrongful conduct occurred, where the complaint alleged sufficient detail about the event to identify it. *Id.* None of these cases are remotely relevant.

-20-

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
Case No. 3:22-cv-04223-JSC

505 Montgomery Street, Suite 1100
San Francisco, California 94111
Telephone: +1.415.500.6080
Facsimile: +1. 415.500.6080

*Attorneys for Plaintiff Epidemic Sound, AB*

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
Case No. 3:22-cv-04223-JSC