| | |
|---|---|
| PRYOR CASHMAN LLP<br>  Ilene S. Farkas (*pro hac vice*)<br>  ifarkas@pryorcashman.com<br>  M. Mona Simonian (*pro hac vice*)<br>  msimonian@pryorcashman.com<br>  Marion R. Harris (*pro hac vice*)<br>  m.harris@pryorcashman.com<br>  Lazar Sterling-Jackson (*pro hac vice*)<br>  lsterling-jackson@pryorcashman.com<br>7 Times Square<br>New York, New York 10036<br>Phone: (212) 421-4100<br>Fax: (212) 326-0806<br><br>SINGER CASHMAN LLP<br>  Adam S. Cashman (State Bar No. 255063)<br>  acashman@singercashman.com<br>  Evan Budaj (State Bar No. 271213)<br>  ebudaj@singercashman.com<br>505 Montgomery Street, Suite 1100<br>San Francisco, California 94111<br>Phone: (415) 500-6080<br>Fax: (415) 500-6080<br><br>*Attorneys for Plaintiff Epidemic Sound, AB* | LATHAM & WATKINS LLP<br>  Joseph R. Wetzel (SBN 238008)<br>  Brittany N. Lovejoy (SBN 286813)<br>  Ivana Dukanovic (SBN 312937)<br>  Peter Calello (SBN 341757)<br>505 Montgomery Street, Suite 2000<br>San Francisco, California 94111-6538<br>Telephone: 415.391.0600<br>Email: Joe.Wetzel@lw.com<br>       Brittany.Lovejoy@lw.com<br><br>LATHAM & WATKINS LLP<br>  Allison L. Stillman (*pro hac vice*)<br>1271 Avenue of the Americas<br>New York, New York 10020<br>Telephone: 212.906.1747<br>Email: Alli.Stillman@lw.com<br><br>*Attorneys for Defendant Meta Platforms, Inc.* |

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EPIDEMIC SOUND, AB,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>META PLATFORMS, INC., f/k/a FACEBOOK, INC.,<br><br>　　　　　Defendant. | CASE NO. 3:22-cv-04223-JSC<br><br>**UPDATED JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge:　The Hon. Jacqueline Scott Corley<br>Date:　　August 31, 2023<br>Time:　　1:30 PM<br>Place:　　Via Zoom<br>　　　　　Courtroom 8, 19th Fl. |

The parties to the above-captioned action, Plaintiff Epidemic Sound, AB ("Epidemic") and Defendant Meta Platforms, Inc. ("Meta"), jointly submit this Updated Joint Case Management Statement in advance of the further case management conference scheduled for August 31, 2023.

## I.  Plaintiff's Statement

*<u>Meta's Failure to Comply with the July 5 Order</u>*.  At the July 5, 2023 Case Management Conference (the "July 5 CMC"), and in the resulting Order Re: Discovery Disputes [Dkt. No. 101] (the "July 5 Order"), the Court ordered Meta, by July 17, 2023, to "produce all data associated with" 10 works identified by Epidemic by Meta's "reference ID" numbers.  [Dkt. No. 101 at 2:5-7].  Meta was to produce all data including "any current or historic instances where those works appear on Meta's platforms."  [*Id.*].  As the Court stressed to Meta, "for these ten, search your system. . . Whatever you can find. Don't cut things off and say, oh, well, that's wasn't responsive. . . . for this one, everything. Don't look at their requests. Everything." July 5 CMC Tr. at 12:23-13:7.[1]  Despite numerous rounds of correspondence and a lengthy meet and confer, Meta has still failed to comply with the July 5 Order over a month later and, indeed, admits as much below.

On July 6, 2023, Epidemic provided the reference IDs for 10 tracks in accordance with the July 5 Order.[2] [Dkt. No. 101 at 2:4-5]. On the July 17 Court-ordered deadline, Meta did not produce "everything" it was required to do; rather, it produced only a subset of data associated with the works identified, which it repeatedly qualifies as all "relevant" data below.  Meta then unilaterally gave itself until July 24 to "produce data associated with the tracks that have matched or conflicted with the 14 reference files," despite the requirement that it do so by July 17 under the July 5 Order.[3]

A review of the data provided on July 24 revealed that Meta had still failed to provide ***all*** data.  Specifically, Meta:  (i) produced select data fields from various data tables, not everything from all relevant data tables; (ii) failed to provide Epidemic with the specific queries it had run to

---

[1] Once this was completed, the parties were then directed to work together on the production of the relevant data for the remaining titles.  *Id* at 2:7-8.  On August 21, Epidemic provided Meta with a list of the remaining reference file IDs, despite Meta's failure to provide all data for even the first 10 Epidemic Tracks.
[2] Due to a technical issue, Epidemic corrected the list to Meta on July 7, 2023 at Meta's request.
[3] Meta did not request an extension from Epidemic or from this Court.

1

UPDATED JOINT CASE MANAGEMENT
STATEMENT
3:22-cv-04223-JSC

identify and produce the data as required under the ESI Order[4]; (iii) failed to produce any ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for Epidemic's 10 tracks; (iv) produced data in numerous disjointed spreadsheets lacking common data fields, leaving Epidemic no discernible way to match Epidemic's 10 tracks to the data concerning infringing tracks on Meta's platforms; and (v) produced data and documents reflecting that the information was sequestered, collected, and/or printed months or weeks before Epidemic's identification of the 10 tracks, clearly contradicting Meta's representations that Epidemic needed to provide Meta with reference file IDs for Meta to produce relevant discovery. [Dkt. No. 89 at 4:3-6 ("In fact, as Epidemic is fully aware, Meta cannot pull that additional data about *Epidemic's* works without further information from Epidemic identifying which reference files loaded by Epidemic into Meta's Rights Manager ("RM") product purportedly embody those specific asserted Epidemic works.") (emphasis in original)]. Epidemic outlined these deficiencies to Meta in correspondence on August 8, 2023 and August 9, 2023.

Meta's failure to comply with this Court's discovery orders became even more apparent after the parties met and conferred on August 11, 2023 (the "Aug. 11 M&C"), during which Epidemic: (i) identified specific data Meta had *not* produced (including, for example, a failure to provide the date on which works were added or removed from the Audio Library)[5]; (ii) requested the queries performed by Meta in producing data, as required under the ESI Order; (iii) requested ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for the 10 Epidemic tracks identified as required under the July 5 Order;

---

[4] The ESI Order requires Meta to meet and confer with and to disclose to Epidemic the queries to be run *before* Meta runs them to afford Epidemic the opportunity to ensure that the queries are proper and will return the correct results, or alternatively to produce the entire database. [Dkt. No. 72 at 14:8-22]. Meta did not follow this procedure in advance and now is refusing to disclose the queries to Epidemic, despite repeated requests. Upon Epidemic's final request, Meta, for the first time, claimed it would be burdensome to produce the queries and claimed it would compromise confidentiality despite the existence of a protective order. Then, hours before filing this Joint Statement, Meta's counsel forwarded a document purportedly "detailing the queries run by Meta." In actuality, it was nothing more than a vague description of data tables it searched but failed entirely to identify values Meta searched for and limits it placed on the search or the results from such searches. The document further confirmed that Meta has not complied with the Court's July 5 Order.

[5] While Meta attempts to argue that this information can be inferred from its production of DDex files, Meta itself conceded during the parties' Aug 11 M&C that the DDex files would only reflect voluntary removal of works by the record label delivering such works. It would not reflect Meta's removal of works from its Audio Library as a result of conflicts, claims of infringement, or indeed, this lawsuit. Meta's knowing misrepresentation of the DDex files is yet another example of its continuing obfuscation of data that the Court ordered it to produce.

and (iv) requested production of data underlying ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ produced in PDF form in light of Meta's court-ordered 30(b)(6) deposition testimony that confirmed such data was available in exportable databases, in contradiction of Meta's previous representations that such ▮▮▮▮▮▮▮▮▮▮ could not be produced as structured data.[6]  Hours after the Aug. 11 M&C and weeks after the Court-ordered deadline, Meta asserted it was "investigating" the missing data fields and subfields identified, but confirmed it would re-produce certain data underlying the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in structured data format rather than PDF, as initially requested by Epidemic well before the July 5 CMC.  It also revealed that despite its assertions to the contrary during the Aug. 11 M&C and prior, Meta did in fact have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for the 10 Epidemic tracks and would produce this data.

On August 17, Meta produced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for the 10 Epidemic tracks identified – which include key data reflecting the availability of, activity concerning, and audio matches to Epidemic tracks on the platforms – one month *after* the Court-ordered deadline.  The production revealed what Epidemic has asserted from the beginning of discovery – ***that Meta's systems can identify every single post, sound recording, and conflict that matches an Epidemic track with the push of a button.***  These reports not only include specific identifying data for each of Epidemic's reference files, but also list, among other things, all Facebook Matched Videos, Instagram Matches, "Prospective Matches," "Song Matches, "Audible Magic" (an audio-recognition software) matches, "Reference Conflicts," a "Raw Match Report," a "Match Dump" and include long lists of matches for each of the works.[7]  Further, for each match, the reports appear to include a category indicating whether the work was related to one of Meta's "Music Partner[s]" – *i.e.*, suppliers to its Audio Library, and appear to identify whether a work is available in the Audio Library, though data about the work's tenure in the library remains unproduced.

Meta's delay and obstruction of critical discovery in this case, and its flagrant disregard for

---

[6] Epidemic further requested that Meta explain how the data produced in separate spreadsheets could be reconciled to link data concerning the 10 Epidemic tracks with the data of infringing tracks matching those Epidemic tracks.

[7] Because Meta again produced these reports in PDF format, pages were cut off, match information was incomplete, and many were of such poor quality as to be unreadable, despite Meta's agreement to reproduce previous ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in structured data format, and despite the data clearly reflecting that the match data can be "dumped" for export.

1  mandates by this Court, has come at considerable cost to Epidemic and appears endless.  Epidemic
2  is entitled to a full search of Meta's Audio Library and user posts created through its "Original
3  Audio" and "Reels Remix Tools" without further delay.  Epidemic is further entitled to a full
4  export of all data concerning all of Epidemic's works and works that match the audio of its works,
5  in whole or in part, immediately.  Meta should also be ordered to immediately produce all internal
6  guides, wikis, and database schematics for all music-related databases to allow Epidemic to have
7  a full understanding of what data Meta has, how the data is related, and how and where it is
8  maintained.[8]  Meta must be compelled to provide full transparency of its databases to prevent
9  further slow drips of incomplete information, which have forced Epidemic to have to identify each
10 time the missing information, flipping the discovery burden on its head at significant cost.

11      ***Additional Discovery Disputes.***  Epidemic has also raised several additional discovery
12 deficiencies with Meta, including Meta's failure to produce the unredacted licenses as ordered by
13 the Court at the July 5 CMC.  [July 5 CMC Tr. at 16:18-23].[9]  To the extent the parties are unable
14 to reach resolution on the discovery deficiencies, Epidemic anticipates it will be forced to raise
15 these disputes with the Court in separate joint statements.  Meta also raises concerns with respect
16 to Epidemic's chain-of-title production, which it has had for over a month, because it is "unable
17 to locate" documents produced by Epidemic.  Meta raised this perceived (but incorrect) issue with
18 Epidemic *for the first time* at 11:22 PM ET yesterday.  Rather than waiting for a response (which
19 it requested by August 28), Meta included this "dispute" in this Statement in violation of Your
20 Honor's Civil Standing Order (Section F) requiring an in-person or video meet and confer before
21 raising discovery disputes with the Court, which has Meta has not even requested.  It is nothing
22 more than a transparent deflection of Meta's own failures to comply with the July 5 Order.

23 **II.  Defendant's Statement**

24      Meta promptly complied with the Court's July 5 Order and Epidemic's discovery requests,

---

[8] Indeed, Meta's counsel finally admitted (after several months of denial) during a June 2, 2023 meet and confer, that it did in fact have such documentation and that it was reviewing them for production.  Yet, months have passed, and Meta has not yet produced such documents, despite such documents being critical to the analysis of Meta's data.

[9] Despite multiple requests by Epidemic, Meta failed to produce the unredacted licenses it was ordered to produce on July 5 until hours before it provided its portion of this CMC Statement on August 23.

1    and has located, collected, and produced far more information than is reasonably tailored to the
2    litigation of Epidemic's claims and Meta's defenses.  Meta has provided Epidemic with substantial
3    information about the tracks on its platforms that have some minimum technical similarity to
4    Epidemic's, data showing posts across Meta's platforms that embody those works, and significant
5    data about user interaction with those posts.  To be clear, Meta has every intention of challenging
6    Epidemic's claim that those tracks are unauthorized uses of Epidemic works, and, further, that they
7    came to exist on Meta's platforms by virtue of any specific intent or knowledge on Meta's part.
8    *But it is entirely unclear what additional information Epidemic thinks it needs in order to litigate*
9    *its copyright infringement claims.*  Indeed, Meta has not resisted the production of data responsive
10   to discovery requests that go far beyond the matter at hand.  And it has complied with the Court's
11   directive to locate "all data" related to Epidemic's reference file IDs—working closely with
12   product team engineers at Meta to identify the data tables that may contain that information from
13   among over [redacted] available at Meta.[10]  It is Epidemic that has resisted providing
14   information that would aid in the location of information responsive to the Court's order, or
15   relevant to its RFPs.  In April, the Court ordered Epidemic to identify the works it was accusing
16   of infringing the then 952 works in suit.  In July, the Court compelled Epidemic to identify a
17   sample of 10 Rights Manager reference files uploaded by Epidemic so that Meta could use those
18   data to locate a host of responsive information for production to Epidemic.  For almost two months
19   thereafter, Epidemic withheld the identification of any additional reference files, delaying Meta's
20   ability to respond to Epidemic's discovery requests and otherwise conduct its investigation of
21   Epidemic's claims.  And despite Meta's good-faith efforts to meet and confer with Epidemic over
22   Meta's complex data productions and many hours over many weeks spent by Meta engineers and

---

[10] Epidemic incorrectly claims that Meta has failed to provide the date on which the works were added or removed from the Audio Library.  Meta has explained to Epidemic that the dates of the availability of tracks in the Audio Library are reflected in the DDex files Meta agreed to produce to Epidemic without any court order, and has produced.  The DDex start and end dates reflecting that information are explained in Meta's public documentation on DDex files.  Further, Epidemic's suggestion that the DDex files were the subject of the July 5 Order is incorrect, as that order concerned data associated with Epidemic's works—i.e., the identified reference files—and not with works included in Meta's Audio Library by third parties, which Epidemic may allege and seek to establish are infringing.

1  in-house counsel in order to respond to Epidemic's questions and concerns, Epidemic is here again
2  asking the Court to find that Meta has deliberately obfuscated some unidentified category of
3  information of unexplained relevance to this case.  As discussed below, Meta has been more than
4  forthcoming in discovery, while Epidemic has withheld and delayed its own production of key
5  evidence in the case.

*__Meta's Compliance with the July 5 Order.__*  In response to the Court's July 5 Order, on July 17, Meta provided Epidemic with over ▓▓▓▓▓▓▓▓▓▓ regarding the 14 reference files that Epidemic identified.  This included, as contemplated by the Order, data that shows all available historical and current user posts and Audio Library tracks containing audio content that was determined to have some minimum technical similarity with Epidemic's reference files.[11]  In addition, Meta immediately used the data produced in response to the July 5 Order to locate, collect, and produce, just one week later, nearly ▓▓▓▓▓▓▓▓▓▓ regarding the posts embodying those overlapping tracks, and information about user interaction with those posts—as it had committed to providing in response to Epidemic's discovery requests.

On August 9, Epidemic, for the first time, raised specific concerns with Meta's production, demanding answers and additional productions within two days.  Meta immediately investigated the specified concerns and, within the extreme timeframe Epidemic demanded, provided answers to many of the questions that Epidemic raised, and committed to producing any additional information responsive to the Court's Order that Meta's on-going investigation of Epidemic's concerns revealed.[12]

---

[11] To be clear, when Epidemic refers to Meta's July 24 production of data "associated with the tracks that have matched or conflicted with the 14 reference files," what it is referring to is granular data about the posts embodying the tracks as well as data about how Facebook or Instagram users interacted with those posts.  The identity of all the musical content that matched Epidemic's reference files; where that content originated; and, with respect to Original Audio content, usage of that content across Instagram and Facebook, was disclosed in the data produced on July 17.

[12] Meta has also explained to Epidemic that it is wrong that "the [produced] information was sequestered, collected, and/or printed months or weeks before Epidemic's identification of the 10 tracks" such that Meta does not need Epidemic's reference file IDs to pull the data are unfounded. As Meta explained, the date that Epidemic appears to reference does not, as Epidemic infers, correspond to the date that the data was pulled.  Rather this is a field in the data tables that indicates

In particular, ███████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████ Meta pulled and produced the pages right away, notwithstanding the fact that they reflect duplicative information concerning Epidemic's account and reference files that had already been produced to Epidemic in other forms, including the match and conflict information Epidemic calls out in its statement.[14]  Epidemic also stated it was having trouble linking various data productions together because they seemed to lack a common field name.  In response, Meta laid out in writing how the tables that Meta produced are related.

A mere three days later, Meta provided Epidemic with a further update on its investigation into Epidemic's concerns.  Meta explained that many of the allegedly "omitted" fields Epidemic identified in its August 9 letter had in fact already been produced under a different field name. Meta also explained that, in the course of its ongoing investigation, it had identified additional data fields from the tables that Meta already produced from and related tables, and that it would supplement its reference file-associated data production as soon as practicable.[15]

Meta is not hiding the ball here.  Contrary to Epidemic's mischaracterizations, there is no simple "push of a button" for Meta to produce "all data" associated with their reference files. Indeed, the experience of producing all locatable data concerning just 14 of Epidemic's reference files has confirmed the opposite.  ████████████████████████████████
████████████████████████████████████

---

when the data was recorded in the data tables.  But whether Meta began to sequester data from Epidemic's Rights Manager account before the Court's Order is also irrelevant.  The works at issue constitute a tiny fraction of relevant data from Epidemic's entire 45,000+ file Rights Manager account, and production of that data in full would be disproportionate to the needs of this case.

[13] It was not until after the Parties' August 11 meet and confer, referenced by Epidemic above, that Meta learned otherwise.

[14] Meta will, of course, provide these pages for the remainder of Epidemic's reference files corresponding to works at issue in this litigation.

[15] This supplemental production will include additional fields from the tables that Meta already produced from and from two related tables, such that Epidemic will have in its possession data contained within all fields from those tables that contain data related to Epidemic's identified reference files.  These fields largely contain information that is duplicative of what has already been produced.

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  The overwhelming majority of these
2  tables have nothing at all to do with Epidemic's reference files, let alone the claims or defenses in
3  this case. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Thus, to collect "all data" associated with Epidemic's reference
5  file works, Meta worked with its data scientists, engineers, and product teams to identify the most
6  comprehensive and extensive tables containing information concerning Rights Manager reference
7  files and/or audio content on Facebook or Instagram.  Indeed, in the course of this litigation, Meta
8  has produced data from nearly ▮▮▮▮▮▮▮▮▮▮▮▮.

9  Meta accepts that the Court's "all data" Order was expansive in its scope.  And it has
10 demonstrated that it is committed to investigating and remedying any potential inadvertent gaps in
11 Meta's production in response to that Order.  Indeed, Epidemic does not identify a single data field
12 responsive to that Order that Meta has refused to provide.  Contrary to Epidemic's representation
13 above, nowhere in this statement has Meta claimed that that it limited its production of materials
14 responsive to the Court's order to "relevant" data.  To its knowledge, Meta is not withholding any
15 data associated with Epidemic's disclosed reference files, and maintains that it has produced data
16 well beyond what is relevant to the adjudication of the claims and defenses in this case.  Separately,
17 Meta has repeatedly expressed its continued willingness to meet and confer with Epidemic
18 regarding the relevance and proportionality of any *additional* data beyond the Court's order that
19 Epidemic might believe is responsive to its RFPs.  In fact, much of what Epidemic takes issue with
20 in its statement above is supposedly missing data from tables associated with user posts that
21 contain tracks that matched or conflicted with Epidemic's works—not data associated with
22 *Epidemic's* reference files.  Meta has committed to producing data about those posts to the extent
23 it is relevant and proportionate—and, to be sure, produced nearly all of that data on July 24 for the
24 fourteen identified reference files.  But that data was not called for by the Court's Order that
25 Epidemic "provide Meta with the reference file identifiers for 10 allegedly infringed works" and
26 then Meta was to provide "all data associated with those works"—i.e., Epidemic's reference files.

27 ***Meta Provided Epidemic With a Description of Its Queries.***  Meta has provided Epidemic
28 with a 5-page narrative that describes, in detail, the databases that were queried, and the queries

that were performed, including the particular fields that were queried. And for each database queried, Meta has either already provided or is in the process of providing (today) Epidemic with a schema of the database, which includes all fields in that database. Epidemic can use all of this information to understand which particular fields Meta queried and produced from, and which it did not. Contrary to the text and intention of the ESI Order, Epidemic is also demanding the raw computer code that Meta engineers wrote to execute its queries. This is not what the ESI Order contemplates and is not what Meta would have provided had the parties had the opportunity to meet and confer before Meta's expedited data pulls. Meta is not aware of ever having disclosed the underlying code for production queries in any litigation—and this is unsurprising, as such code is not only highly technical but also includes non-functional comments reflecting attorney-client communications and work product to remind the engineer of instructions from attorneys. *See, e.g.*, *Rembrandt Diagnostics, LP v. Innovacon, Inc.,* No. 16-cv-0698, 2018 WL 692259, at *8 (S.D. Cal. Feb. 2, 2018) (denying motion to compel queries on the basis that they "implicate attorney-client or work product privileges" and are distinct from "search terms.") As contemplated by the ESI Order, the query narrative provides useable information about exactly what Meta did. Indeed, upon reviewing the document, Epidemic has already asked Meta for additional information, which Meta will provide. What Meta will not do, and what it did not agree to, is to provide the engineering code Meta used to effectuate its queries.

**<u>Meta Has Produced Its License Agreements Unredacted</u>**. Consistent with the Court's Order at the last case management conference, Meta produced unredacted versions of its agreements with the distributors who license and distribute the tracks that Epidemic has accused as infringing. Epidemic, again, tries to make it seem that Meta has somehow been deficient in its discovery where *Epidemic has already received the thing it complains it did not get.* And contrary to Epidemic's suggestion, Meta was not gaming the production of these agreements. As provided for by the terms of these agreements, Meta was required to provide its licensors with notice of the disclosure and give sufficient time to allow them to intervene with the Court.

**<u>Epidemic's Responses to Meta's Discovery Requests</u>**. While it nitpicks Meta's vast data production, Epidemic has yet to produce documents or provide interrogatory responses for dozens

of discovery requests that Meta served *over seven months ago*.  Meta has sought to address these deficiencies without the Court's assistance wherever possible but has reached an impasse with respect to some issues and is still waiting on huge volumes of evidence that has been promised.

Despite repeated requests about the timing of Epidemic's forthcoming productions, as of the latest meet and confer on August 17, Epidemic has failed to substantially to respond to at least 25 interrogatories and document requests, including requests concerning Epidemic's: investigation of infringing works on Meta's platforms, use of Rights Manager, calculation of the share of use of its works on Meta's platform and the proportion of allegedly infringing uses, and financial documents relevant to Epidemic's demand for damages.  While Epidemic has assured that this information is forthcoming, Epidemic has declined to provide any date certain.  And even where the Court has imposed a production deadline, it appears Epidemic has failed to comply with that order, as Meta is unable to locate chain-of-title documents for hundreds of the Epidemic works at issue, despite the Court ordering Epidemic to "produce chain-of-title documents for each work" by July 28, 2023 (21 days after Meta provided the license information for the accused works).  *See* Dkt. No. 101 at 2.  Meta has proposed a discussion with Epidemic to better understand and resolve this discrepancy in an effort to avoid troubling the Court.

***Epidemic's Obstruction Requires Motion Practice***.  In forthcoming joint discovery statements, in addition to Epidemic's indefinitely delayed production of materials it agreed to produce many months ago, Meta will move to compel:  evidence regarding Epidemic's attempts to enforce the copyrights in its works, and communications with Epidemic's licensees regarding the use of the works in suit on Meta's platforms. Meta has attempted to find compromise, but unfortunately has been unable to do so and will need the Court's intervention.

**III.    Case Schedule**

The parties have reached agreement on a proposed schedule for the Court's consideration, which they have filed concurrently on the docket as a proposed order.

**Respectfully submitted,**

Dated: August 24, 2023            */s/ Marion R. Harris*
                                  Counsel for Plaintiff


Dated: August 24, 2023            */s/ Joseph R. Wetzel*
                                  Counsel for Defendant

# **ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Date: August 24, 2023                                                  */s/ Joseph R. Wetzel*