1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EPIDEMIC SOUND, AB,

          Plaintiff,

     v.

META PLATFORMS, INC.,

          Defendant.

Case No.  22-cv-04223-JSC

**ORDER RE: MOTION TO STAY**

Re: Dkt. No. 275

Epidemic Sound, AB sues Meta Platforms, Inc., f/k/a Facebook, Inc. "to stop the theft of music . . . occurring knowingly, intentionally and brazenly by Meta on its Facebook and Instagram social media platforms on a daily basis." (Dkt. No. 1 ¶ 1.)  Now pending before the Court is Meta's motion to stay the case "pending the Supreme Court's decision in *Cox Communications, Inc. v. Sony Music Entertainment*, No. 24-171, 2025 WL 1787701 (U.S. June 30, 2025), or, in the alternative, an order continuing all case deadlines (except for expert discovery cut-off) until after the Supreme Court's decision in *Cox*." (Dkt. No. 275 at 2.)  Having carefully considered the parties' submissions, and with the benefit of oral argument on August 28, 2025, the Court GRANTS in part Meta's motion.  The Court VACATES the trial date and will hold trial after the Supreme Court's ruling in *Cox*.  However, the Court will proceed with summary judgment on all issues, subject to reconsideration, if appropriate, after *Cox* is decided.  The Court understands the parties will submit a stipulation proposing modified summary judgment deadlines.

**BACKGROUND**

**I.    COMPLAINT ALLEGATIONS**

"Epidemic is the owner of a catalog of over 38,000 top quality music works in over 160 genres." (Dkt. No. 1 ¶ 3.)  "In order to access and use Epidemic's extensive catalog of music,

1    Epidemic requires users to license its tracks."  (*Id.* ¶ 22.)

2         "Meta has been offering, and continues to offer Epidemic's music to all users on Meta's

3    platforms such as Facebook and Instagram, without authorization."  (*Id.* ¶ 24.)  Meta's "Music

4    Library"—in which Meta curates and stores music for its Instagram and Facebook users to

5    download, stream, and use in video content and posts—contains over 950 Epidemic tracks.  (*Id.* ¶¶

6    26-28.)  "By including Epidemic's Tracks in its Music Library without authorization, Meta is

7    actively offering Epidemic's Tracks for download, streaming, user synchronization, reproduction

8    and distribution to its (unlicensed) users without a proper license or any other authorization from

9    Epidemic."  (*Id.* ¶ 29.)

10        The complaint alleges Meta "has actively infringed, as well as participated in, encouraged

11   and enabled such infringement," including by "creat[ing] tools whose primary purpose is to

12   increase the amount of theft on Facebook and Instagram."  (Dkt. No. 1 ¶ 1.)  One tool is the

13   Original Audio feature.  When a user posts a "Reel" containing music not procured from Meta's

14   Music Library, "Meta's Original Audio feature presumes that such music is owned by the user

15   posting the Reel, and then Meta includes a 'button' identifying that music as 'original audio.'"

16   (*Id.* ¶ 32.)  Other users who view the Reel can "click on that 'button' to 'rip,' or separate that

17   music from the video content, and use a copy of that music for themselves and, upon information

18   and belief, to download or save 'original audio' to curate personal music libraries on the Meta

19   platforms for future use."  (*Id*.)  "In other words, the Original Audio feature allows Meta to

20   extract, or separate the music from the original video content in which it was incorporated, and

21   reproduce it for any of their billions of users who wish to incorporate it into their own video

22   content, irrespective of whether Meta (or anyone else) has any authority to offer, reproduce,

23   distribute or otherwise use that music in the first instance."  (*Id.* ¶ 34.)

24        Meta's "Reels Remix feature . . . similarly facilitates and enables massive infringements on

25   its platforms" by "allow[ing] and encourag[ing] its users to take another user's audiovisual

26   content, including any music used therein whether authorized or unauthorized, and incorporate it

27   into their own Reel, irrespective of whether anyone has the authority to synchronize or otherwise

28   use the incorporated music in this manner."  (*Id.* ¶¶ 35, 37.)  "Epidemic's own investigation

United States District Court
Northern District of California

2

1    reveals that a substantial number of Epidemic's Tracks being used without authorization on

2    Meta's platforms have . . . been improperly reproduced in subsequent Reels through Meta's

3    Original Audio and Reels Remix features." (*Id.* ¶ 38.)

4          Epidemic alleges three causes of action: (1) direct copyright infringement, (2) inducement

5    of copyright infringement, and (3) contributory copyright infringement. (*Id.* at 14-17.) As part of

6    the requested relied, Epidemic seeks "a declaration that Meta has directly and/or secondarily

7    infringed Epidemic's copyrights under the Copyright Act" and "a declaration that such

8    infringement is and/or was willful." (*Id.* at 18.)

9    **II.    PROCEDURAL HISTORY**

10          Epidemic filed suit in July 2022. (Dkt. No. 1.) Under the amended case schedule, the

11    deadline for filing dispositive motions is September 11, 2025, with a hearing on November 6,

12    2025. (Dkt. No. 273 at 4.) The pretrial conference is scheduled for December 18, 2025, with trial

13    scheduled to commence on January 21, 2026. (*Id.*)

14          Meta moves to stay the case pending the Supreme Court's decision in *Cox,* "or, in the

15    alternative, an order continuing all case deadlines (except for expert discovery cut-off) until after

16    the Supreme Court's decision in *Cox*, such that the dispositive motions deadline is 30 days after

17    the Supreme Court's decision*,* with all other dates in the remaining schedule shifting accordingly."

18    (Dkt. No. 275 at 2.) Meta argues "a retrial on liability, damages, or both will likely result if the

19    summary judgment and trial proceedings move ahead without the benefit of the Supreme Court's

20    forthcoming direction." (*Id.* at 4.)

21    **III.    *COX* DECISION AND PETITION FOR CERTIORARI**

22          The Supreme Court granted certiorari to review the Fourth Circuit's decision in *Sony*

23    *Music Entertainment v. Cox Communications, Inc.*, 93 F.4th 222 (4th Cir. 2024). The defendant

24    in that case, Cox Communications, is an internet service provider that "sells internet, telephone,

25    and cable television service to 6 million homes and businesses across the United States." *Id.* at

26    227. The plaintiffs are record companies and music publishers that own copyrighted musical

27    works. *Id.* "Some users of Cox's internet service infringed Plaintiffs' copyrights by downloading

28    or distributing songs over the internet without permission." *Id.* The plaintiffs sued Cox as the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    internet service provider "to hold it responsible for its customers' copyright infringement." *Id.*

2    "The jury found Cox liable for both willful contributory and vicarious infringement of 10,017

3    copyrighted works owned by Plaintiffs and awarded $1 billion in statutory damages." *Id.*

4        On appeal, the Fourth Circuit affirmed the jury's contributory infringement finding. *Id.* at

5    227. "Under this theory, one who, with knowledge of the infringing activity, induces, causes or

6    materially contributes to the infringing conduct of another is liable for the infringement, too." *Id.*

7    at 233 (cleaned up). The Fourth Circuit noted "'mere[ ] . . . failure to take affirmative steps to

8    prevent infringement' does not establish contributory liability 'in the absence of other evidence of

9    intent.'" *Id.* at 236 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913,

10   939 n.12 (2005)). But, the court continued, "supplying a product with knowledge that the

11   recipient will use it to infringe copyrights is exactly the sort of culpable conduct sufficient for

12   contributory infringement." *Id.* The court concluded the evidence at trial—for example, that Cox

13   knew of specific instances of repeat copyright infringement and chose to continue providing those

14   users with internet access and Cox's "increasingly liberal policies and procedures for responding

15   to reported infringement"—"showed more than mere failure to prevent infringement." *Id.* at 236-

16   37. The evidence was thus "sufficient to support a finding that Cox materially contributed to

17   copyright infringement occurring on its network and that its conduct was culpable." *Id.* at 237.

18       On June 30, 2025, the Supreme Court granted certiorari on the following two questions:

19           1. This Court has held that a business commits contributory copyright
20   infringement when it "distributes a device with the object of
     promoting its use to infringe copyright, as shown by clear expression
     or other affirmative steps to foster infringement." *Metro-Goldwyn-*
21   *Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919 (2005). The
     courts of appeals have split three ways over the scope of that ruling,
22   developing differing standards for when it is appropriate to hold an
     online service provider secondarily liable for copyright infringement
23   committed by users. Did the Fourth Circuit err in holding that a
     service provider can be held liable for "materially contributing" to
24   copyright infringement merely because it knew that people were
     using certain accounts to infringe and did not terminate access,
25   without proof that the service provider affirmatively fostered
     infringement or otherwise intended to promote it?
26
27           2. Generally, a defendant cannot be held liable as a willful violator
     of the law—and subject to increased penalties—without proof that it
     knew or recklessly disregarded a high risk that its own conduct was
28   illegal. In conflict with the Eighth Circuit, the Fourth Circuit upheld

an instruction allowing the jury to find willfulness if Cox knew its subscribers' conduct was illegal—without proof Cox knew its own conduct in not terminating them was illegal. Did the Fourth Circuit err in holding that mere knowledge of another's direct infringement suffices to find willfulness under 17 U.S.C. § 504(c)?

Question Presented, Case No. 24-171, *Cox Commc'ns, Inc. v. Sony Music Ent.* (June 30, 2025), https://www.supremecourt.gov/qp/24-00171qp.pdf. Pursuant to the *Cox* parties' request to extend the briefing deadlines, the matter will be fully briefed by November 14, 2025. Docket, Case No. 24-171 (July 17, 2025).[1]  By Meta's estimation, the Court will issue a decision in *Cox* "no later than June 2026." (Dkt. No. 275 at 6.)

## DISCUSSION

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In deciding whether to grant a stay, a court may weigh the following: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). A district court's decision to grant or deny a *Landis* stay is a matter of discretion. *See Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). "[I]f there is even a fair possibility that the stay . . . will work damage to [someone] else," the burden is on the moving party to "make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

### A.    Orderly Course of Justice

#### 1.    Contributory Infringement

In this case, staying the trial will preserve resources by clarifying the standard for contributory infringement—one of the three claims Epidemic asserts. In *Grokster,* the Supreme Court articulated the following standard for contributory infringement: "one who distributes a

---

[1] The docket is available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/24-171.html

United States District Court
Northern District of California

1    device with the object of promoting its use to infringe copyright, as shown by clear expression or

2    other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement

3    by third parties."  545 U.S. at 919.

4        The *Cox* petition for certiorari argues the Fourth Circuit misinterpreted *Grokster* "and

5    create[d] a three-way circuit split on the proper threshold for material-contribution liability":

6

7        Adhering to *Grokster*'s requirement of "purposeful, culpable
         expression and conduct" for secondary liability, 545 U.S. at 937, the
8        Second and Tenth Circuits hold that mere knowledge of direct
         infringement is not enough; rather, the plaintiff must prove that the
9        service provider took affirmative steps to foster infringement.  In the
         Ninth Circuit, knowledge of infringement is also insufficient, but the
10       plaintiff does not necessarily need to prove affirmative steps under
         *Grokster*; a service provider can also be held liable if it knew of
11       infringement and failed to take available, simple measures to stop it.
         The Fourth Circuit alone holds that where a service provider is aware
12       that a particular subscriber is likely to infringe, the service provider
         can be held liable merely for failing to terminate them.

13   Petition for Writ of Certiorari ("Petition"), *Cox Commc'ns, Inc. v. Sony Music Ent.* Case No. 24-

14   171 at 17 (Aug. 15, 2024), https://www.supremecourt.gov/DocketPDF/24/24-171/322523/

15   20240815090212089_240802a%20Petition%20for%20efiling.pdf.  Because the Supreme Court in

16   *Cox* will consider the standard for contributory infringement, and because Epidemic asserts a

17   claim for contributory infringement, a finite stay pending Supreme Court guidance will ensure the

18   parties argue and the Court applies the correct legal standard at trial.

19       This is particularly so when the *Cox* petition puts the Ninth Circuit's contributory

20   infringement standard at issue.  The petition cites *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d

21   1146 (9th Cir. 2007) as articulating the Ninth Circuit's "middle-ground position" on contributory

22   infringement.  Petition at 3.  In that case, the plaintiff, Perfect 10, "market[ed] and [sold]

23   copyrighted images of nude models."  *Id* at 1155.  "Some website publishers republish[ed] Perfect

24   10's images on the Internet without authorization" and when this occurred, "Google's search

25   engine may automatically index the webpages containing these images and provide thumbnail

26   versions of images in response to user inquiries."  *Id.* at 1157.  The Ninth Circuit considered

27   whether, pursuant to *Grokster*, Google could be liable for contributory infringement.  *Id.* at 1170.

28   The court concluded "Google could be held contributorily liable if it had knowledge that

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1    infringing Perfect 10 images were available using its search engine, could take simple measures to

2    prevent further damage to Perfect 10's copyrighted works, and failed to take such steps."  *Id.* at

3    1172.  The Ninth Circuit has since elaborated on its "simple measures" standard, including in the

4    context of other online services.  *See, e.g.*, *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 671

5    (9th Cir. 2017) (holding "there were no simple measures available that Giganews failed to take to

6    remove Perfect 10's works from its servers"); *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 745

7    (9th Cir. 2019) ("Zillow did not have appropriately 'specific' information necessary to take

8    'simple measures' to remedy the violation.").  Here, for Epidemic's contributory infringement

9    claim, the parties' summary judgment briefs will likely cite and apply the Ninth Circuit's "simple

10    measures" standard.  Clarity on that standard's applicability—including whether it is consistent

11    with *Grokster*—will thus benefit the parties, the Court, and the orderly course of justice.

12    Epidemic argues a stay is inappropriate because *Cox* is not factually analogous to the

13    present case.  Specifically, Epidemic argues "[*Cox*] concerns the actions or failure to act by a pure

14    [internet services provider]—the entity simply providing a connection to the internet," whereas

15    Meta "does not supply customers with internet connections."  (Dkt. No. 284 at 8.)  While the *Cox*

16    defendant is an internet service provider, the cases creating the circuit split on contributory

17    infringement did not involve internet service providers.  *See EMI Christian Music Grp., Inc. v.*

18    *MP3tunes, LLC*, 844 F.3d 79, 85 (2d Cir. 2016) (considering contributory infringement on

19    defendant's websites, which "operated as a locker service for storing digital music" and "allowed

20    users to search for free music on the internet"); *Greer v. Moon*, 83 F.4th 1283, 1288 (10th Cir.

21    2023) (considering whether defendant, who operated a website onto which users uploaded the

22    plaintiff's self-published book and copyrighted song without authorization, was liable for

23    contributory infringement); *Perfect 10*, 508 F.3d at 1157 (considering contributory infringement as

24    to Google's search engine).  As such, it is unlikely the Supreme Court's decision will be limited to

25    "pure [internet service providers]" as Epidemic asserts.  (Dkt. No. 284 at 8.)  Instead, the Supreme

26    Court will likely resolve the circuit spit by clarifying the contributory infringement standard for

27    digital service providers more broadly.  *See* Petition at 38 ("The material-contribution theory at

28    issue here will affect secondary liability across these technological contexts.  And the continued

7

1    march of technological progress enhances the need for this Court to update secondary-liability

2    rules for the modern internet era.").

3       Furthermore, the *Cox* certiorari petition separately argues the Fourth Circuit's decision

4    conflicts with *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), in which the plaintiffs—injured by a

5    terrorist attack carried out by ISIS—sued Facebook, Twitter, and Google "for allegedly aiding and

6    abetting ISIS." *Id.* at 478. The court concluded the plaintiffs' claims rested "less on affirmative

7    misconduct and more on an alleged failure to stop ISIS from using these platforms," which was

8    insufficient under the aiding and abetting statute at issue. *Id.* at 499. The *Cox* petition thus argues

9    "[b]y permitting liability based on passive provision of internet services with knowledge of

10   infringing conduct, the Fourth Circuit's decision conflicts with . . . *Twitter*'s rejection of liability

11   based on mere knowledge of wrongful conduct." Petition at 24. So, as the issue is teed up in the

12   petition, the *Cox* decision may address Meta's liability for the "provision of . . . infrastructure,"

13   *see Twitter*, 598 U.S. at 499, which is at issue in this case. (Dkt. No. 1 ¶ 76 (alleging "Meta is

14   liable as a contributory copyright infringer" by "providing tools to its users to enable them to

15   reproduce distribute, synchronize, and perform Epidemic's works without authorization.").)

16      Epidemic also argues a stay is "inappropriate in light of the direct infringement claims

17   Epidemic has asserted against Meta." (Dkt. No. 284 at 8.) Epidemic argues if it "prevails on all

18   of its direct infringement claims (as it certainly expects to), the secondary liability claims may not

19   be necessary to litigate in every instance." (*Id.*) Despite Epidemic's expression of confidence in

20   its direct infringement claim, Epidemic continues to assert a contributory infringement claim, plus

21   a related inducement of copyright infringement claim. *See Erickson Prods., Inc. v. Kast*, 921 F.3d

22   822, 831 (9th Cir. 2019) ("A party engages in contributory copyright infringement when it (1) has

23   knowledge of another's infringement and (2) either (a) materially contributes to or (b) *induces that*

24   *infringement*.") (cleaned up) (emphasis added). The Supreme Court's decision in *Cox* will bear on

25   these claims.

26       **2.  Willfulness**

27      The *Cox* decision will also clarify the standard for willfulness. *See* 17 U.S.C. § 504(c) ("In

28   a case where the copyright owner sustains the burden of proving, and the court finds, that

*United States District Court*
*Northern District of California*

8

1  infringement was committed willfully, the court in its discretion may increase the award of

2  statutory damages to a sum of not more than $150,000."). The *Cox* petition for certiorari explains

3  the Fourth and Eight Circuits "adopted irreconcilable answers" to the following question: "Once a

4  defendant has been found secondarily liable for infringement, what else must the plaintiff prove to

5  show willful infringement and subject the defendant to increased statutory damages?" Petition at

6  29. In the Eighth Circuit case, a retailer's knowledge its customers' actions violated copyright law

7  did "not show that the [retailers'] employees understood their own actions to be culpable."

8  *RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 779 (8th Cir. 1988) (emphasis

9  added). Because "willfulness entails knowledge that an act constitutes an infringement," and

10  because it was not shown the retailers believed their own conduct constituted copyright

11  infringement, the district court did not err in concluding the retailers' infringements were not

12  willful. *Id.* In contrast, the Fourth Circuit upheld a jury instruction that "Cox's contributory or

13  vicarious infringement is considered willful if [the plaintiff] proves by a preponderance of the

14  evidence that Cox had knowledge that *its subscribers'* actions constituted infringement of [the

15  plaintiff's] copyrights . . ." *Cox*, 881 F.3d at 313 n.7 (emphasis added). Thus, in *Cox*, the

16  Supreme Court will consider whether "the Fourth Circuit err[ed] in holding that mere knowledge

17  of another's direct infringement suffices to find willfulness under 17 U.S.C. § 504(c)."

18  　　　In this case, Epidemic alleges Meta's infringement was willful. (Dkt. No. 1 ¶¶ 63, 70, 77

19  ("Meta's acts of infringement are willful, intentional and purposeful, in disregard and indifferent

20  to Epidemic's rights.").) Epidemic thus alleges it "is entitled to maximum statutory damages,

21  pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or

22  such other amounts as may be proper under 17 U.S.C. § 504(c)." (*Id.* ¶¶ 64, 71, 78.) Because

23  Epidemic seeks damages for willful infringement, and because the Supreme Court in *Cox* will

24  consider what constitutes willful infringement, a stay will provide clarity on the damages available

25  to Epidemic.

26  　　　　　　　　　　　　　　　　　　　　　***

27  　　　Given the likelihood the *Cox* decision will simplify questions of law regarding Epidemic's

28  contributory infringement claim and the standard for willfulness, the orderly course of justice

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1    favors granting a stay of the jury trial.  The hardship or inequity factor likewise favors a stay

2    because both parties will expend unnecessary resources by trying the contributory infringement

3    and willfulness claims without the benefit of the Supreme Court's forthcoming guidance. But,

4    even more significantly, the public's resources—namely, jury resources—will be conserved by

5    waiting to empanel a jury until the Supreme Court has spoken.

6          **B.     Damage**

7          Meanwhile, staying the trial pending the Supreme Court's decision in *Cox* will not harm or

8    damage Epidemic.  Epidemic asserts "[t]his case involves the yearslong, systematic, and knowing

9    infringement of Epidemic's copyrighted works by Meta," which "continue[s] . . . to this day."

10    (Dkt. No. 284 at 9.)  Epidemic thus contends "[a]llowing further delay in adjudication of this case,

11    especially where Meta refuses to address the ongoing infringement on its own platforms in the

12    meantime, will result in further irreparable harm to Epidemic."  (*Id.*)

13          But Epidemic does not support its assertion that delay will create "irreparable harm";

14    meanwhile, Meta presents evidence it will not.  (Dkt. No. 290-7 at 3 (Meta expert concluding

15    Epidemic will not suffer irreparable harm in the absence of an injunction because "Epidemic has

16    chosen to monetize its catalog through licensing" so "Epidemic has demonstrated that it views

17    royalty payments as an acceptable form of compensation for use of the tracks in its catalog").)

18          Moreover, Epidemic's delay in bringing this lawsuit undermines its present assertion of

19    irreparable harm.  The complaint alleges Epidemic discovered the infringement in at least

20    November 2017.  (Dkt. No. 1 ¶ 48.)  Epidemic filed the complaint over four years later, in July

21    2022.  For the past several years, the parties have been engaging in discovery, including stipulated

22    agreements to extend the discovery deadlines.  (*See*, *e.g.*, Dkt. No. 151.)  Given the substantial

23    time and resources the parties have already invested in this case, a finite delay of trial pending

24    Supreme Court guidance on the standards for contributory infringement and willfulness outweighs

25    any harm or damage caused by delay.

26                              **CONCLUSION**

27          For the reasons stated above, the Court GRANTS in part Meta's motion.  The January

28    2026 jury trial is VACATED, to be rescheduled after there is better data on the likely timing of a

United States District Court
Northern District of California

1    Supreme Court decision in *Cox*.  Summary judgment, however, will not be stayed and the Court

2    looks forward to the parties' stipulation proposing a modified summary judgment briefing

3    schedule.

4        This Order disposes of Docket No. 275.

5        **IT IS SO ORDERED.**

6    Dated: August 28, 2025

7

8    _____

9    JACQUELINE SCOTT CORLEY
     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28